RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0228P (6th Cir.)
File Name: 03a0228p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

BOBBY WEBB (01-5682) and
PRESTON WEBB (01-5683),
*Defendants-Appellants.*

Nos. 01-5682/5683

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 00-20130—Jon Phipps McCalla, District Judge.

Submitted: June 20, 2003

Decided and Filed: July 11, 2003

Before: BOGGS and GILMAN, Circuit Judges; DOWD,
Senior District Judge.[*]

———————————

**COUNSEL**

**ON BRIEF:** James O. Marty, Brett B. Stein, FINLEY &
STEIN, Memphis, Tennessee, for Appellants. Stuart J.

_____

[*] The Honorable David D. Dowd, Jr., Senior United States District
Judge for the Northern District of Ohio, sitting by designation.

Canale, ASSISTANT UNITED STATES ATTORNEY,
Memphis, Tennessee, for Appellee.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge. Bobby Webb
and his son, Preston Webb, pled guilty to both conspiring to
possess and with actually possessing Dilaudid tablets, each
with the intent to distribute, in violation of 21 U.S.C. §§ 846
and 841(a)(1). On appeal, the Webbs argue that the district
court improperly (1) enhanced their offense levels for
possession of a firearm under United States Sentencing
Guidelines § 2D1.1(b)(1); (2) denied them a reduction for
acceptance of responsibility under Sentencing Guidelines
§ 3E1.1; and (3) considered the full weight of the tablets in
computing their offense levels. In addition, Preston Webb
argues that the district court improperly enhanced his offense
level for being a manager of the conspiracy. For the reasons
set forth below, we **AFFIRM** the judgments of the district
court.

## I. BACKGROUND

### A. Factual background

Bobby and Preston Webb conducted a fencing operation in
Memphis, Tennessee by paying for stolen merchandise with
Dilaudid pills, a synthetic heroin. Law enforcement officers
began investigating the Webbs in February of 2000. On
March 29, 2000, federal search and seizure warrants were
served on the Webbs' businesses and residences. At the
business address where all of the undercover purchases of
Dilaudid had been made, the officers recovered stolen
merchandise, Dilaudid tablets, a Smith & Wesson .38-caliber
revolver, and a disassembled 9mm submachine gun.

The officers also interviewed Preston Webb at the time of the search. He admitted that he and his father, Bobby, had been dealing in Dilaudid for approximately three months. Bobby Webb also spoke to the officers on the day of the search. Later that spring, local law enforcement officers received information that the Webbs were still dealing drugs. On June 15, 2000, the Webbs were arrested and a second search took place at their business. More Dilaudid tablets were seized at that time.

**B.  Procedural background**

A superseding indictment on October 24, 2000 charged the Webbs both with conspiring to possess and with actually possessing Dilaudid, each with the intent to distribute. On February 8, 2001, both defendants pled guilty to all counts. The Webbs' sentencing hearing took place in May of 2001. Although they did not object to the facts as presented in the Presentence Report, they filed four objections to the recommendations contained therein that mirror the arguments they make on appeal. The probation officer then filed an addendum to the Presentence Report, responding to the Webbs' objections. After conducting a sentencing hearing, the district court adopted the Presentence Report as amended and sentenced both Bobby and Preston Webb to 235 months of imprisonment. This timely appeal followed.

## II.  ANALYSIS

**A.  Standard of review**

In reviewing a district court's application of the Sentencing Guidelines, we "accept the findings of fact of the district court unless they are clearly erroneous and . . . give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). In light of *Buford v. United States*, 532 U.S. 59, 63-66 (2001) (holding that the district court was entitled to deference in its application of § 4B1.2 of the Sentencing Guidelines in a case where the underlying

facts were undisputed), this court has held that our standard of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should not be disturbed unless clearly erroneous. *United States v. Jackson-Randolph*, 282 F.3d 369, 389-90 (6th Cir. 2002) (holding that the Supreme Court's reasoning in *Buford* leads to the use of a deferential standard of review in the application of the Sentencing Guidelines under circumstances involving fact-bound determinations).

**B.  The district court did not err in enhancing the defendants' offense levels for possession of a firearm under Sentencing Guidelines § 2D1.1(b)(1)**

The Webbs argue that the district court erred in enhancing their sentences for possession of a firearm because the government did not present evidence sufficient to establish that they were aware of the presence of the .38-caliber revolver in their store. In support of their contention, the Webbs point to the sentencing-hearing testimony of Joyce Webb, Bobby's wife and Preston's mother, to the effect that the gun belonged to her.

Under Sentencing Guidelines § 2D1.1(b)(1), the offense level may be increased by two levels if a dangerous weapon was possessed during an offense involving drugs. The commentary provides that the enhancement "should be applied if the weapon was present, unless it was clearly improbable that the weapon was connected with the offense." U.S. Sentencing Guidelines Manual § 2D1.1, cmt. n.3 (2000). To start with, the government must prove by a preponderance of the evidence that the defendant actually or constructively possessed the weapon and that such possession was during the commission of an offense involving drugs. *United States v. Dunlap*, 209 F.3d 472, 477 (6th Cir. 2000). The burden then shifts to the defendant to prove that any connection between the drug offense and the weapon is clearly improbable. *Id.*

At the sentencing hearing, the district court considered Joyce Webb's testimony in its entirety, but found it unconvincing. She could not identify the type of gun found at the defendants' place of business or even describe what the gun looked like. Although she claimed that she kept it for protection at her restaurant, the gun was found at the defendants' adjacent business location where all of the undercover drug transactions had occurred. Further, there was ample evidence provided by the investigating officers of where the gun was located in relation to the Webbs' drug dealing. The district court found that the government had met its burden and that the Webbs had not demonstrated that the gun's connection with the offense was clearly improbable. Because they rely on essentially the same arguments and evidence on appeal, the Webbs have not demonstrated that the district court's application of the enhancement was clearly erroneous.

**C. The district court did not err in denying the defendants a reduction for acceptance of responsibility under Sentencing Guidelines § 3E1.1**

As discussed in Part II.A. above, the Supreme Court in *Buford* applied a deferential standard of review to a district court's application of Sentencing Guidelines § 4B1.2 to the undisputed facts. *Buford*, 532 U.S. at 64-65. The Court noted "the fact-bound nature of the legal decision, the comparatively greater expertise of the District Court, and the limited value of uniform court of appeals precedent . . . ." *Id.* at 66. Following the reasoning of *Buford* and of this court in *Jackson-Randoph*, 282 F.3d at 388-90, an unreported decision has applied the deferential standard of review to § 3E1.1. *United States v. Miller*, No. 01-5581, 2002 WL 1894647, *5 (6th Cir. Aug. 15, 2002) (holding that the district court's denial of a reduction for acceptance of responsibility is "a factual question, and should be accorded great deference and should not be disturbed unless clearly erroneous."). Section 3E1.1's commentary further supports the use of a deferential standard of review: "The sentencing judge is in a unique

position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.5 (2000).

Consequently, the Webbs' reliance on the older cases of *United States v. Jeter*, 191 F.3d 637 (6th Cir. 1999) (reviewing de novo an application of the acceptance of responsibility adjustment to uncontested facts), and *United States v. Tilford*, 224 F.3d 865 (6th Cir. 2000) (same), and the government's reliance on *United States v. Childers*, 86 F.3d 562 (6th Cir. 1996) (same), are both misplaced. The newer deferential standard adopted by *Buford* and its progeny is now controlling.

In response to the defendants' objection regarding the proposed denial of a reduction for acceptance of responsibility, the probation officer filed an addendum to the Presentence Report. Both Bobby and Preston were interviewed by the probation officer regarding their acceptance of responsibility. Bobby expressed remorse, but also disagreed with the factual accuracy of his conduct as related in the Presentence Report. The probation officer found that Bobby's statements were inconsistent with his guilty plea and his failure to earlier object to the facts as presented in the Presentence Report. *See* U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.1(a) (2000) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.").

The denial of Preston's request for an acceptance-of-responsibility reduction is a closer case. Although Preston expressed greater remorse than Bobby and did not engage in drug trafficking subsequent to his guilty plea, the probation officer nevertheless recommended that the reduction be denied based upon Preston's admission of continuing illegal conduct after the initial search warrants were executed in March of 2000. The probation officer concluded that

Preston's ongoing criminal activity up to the time of his arrest in June was inconsistent with the acceptance of responsibility. Using the appropriate standard of review, we conclude that the district court did not err in determining that Preston's conduct was inconsistent with the acceptance of responsibility.

As § 3E1.1 of the Sentencing Guidelines provides, the district court is to make an acceptance-of-responsibility determination based upon the facts presented. The entry of a guilty plea does not obligate the court to find that a reduction is appropriate. *Id.*, cmt. n.3. In this case, the district court adopted the Presentence Report as it had been supplemented in response to the defendants' objections. Based upon the evidence in the record, the district court's finding was not clearly erroneous.

**D. The district court did not err in calculating the weight of the Dilaudid tablets for purposes of determining the defendants' base offense levels**

Although the Webbs argue that the conversion table in Sentencing Guidelines § 2D1.1 is unfair and in violation of the Fourteenth Amendment, they fail to provide any support for their argument. In any event, the district court properly considered the weight of the Dilaudid tablets in determining the Webbs' base offense level. The Sentencing Guidelines provide that "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." *Id.*, § 2D1.1(c)(A). This court held in *United States v. Landers*, 39 F.3d 643, 646 (6th Cir. 1994), that the entire weight of Dilaudid tablets should be used in calculating the base offense level. We thus find no error by the district court in determining the Webbs' base offense level under Sentencing Guidelines § 2D1.1.

**E. The district court did not err in enhancing Preston Webb's offense level as a manager of the conspiracy**

Finally, Preston Webb argues that the district court erred in giving him a two-level enhancement as a manager of the conspiracy under Sentencing Guidelines § 3B1.1(c). The district court, however, was provided with ample evidence at the sentencing hearing to find that Preston held managerial and supervisory roles essentially equal to those of his father. U.S. Sentencing Guidelines Manual § 3B1.1, cmt. n.4, states that "there can . . . be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." In addition, the undisputed facts in the record show that Preston ran the organization together with his father and that five or more people were involved in the conspiracy. The district court thus did not err in finding that Preston should receive a two-level enhancement for his managerial role in the conspiracy.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgments of the district court.