**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Keeda HAYNES, Defendant–Appellant.**

**No. 02–6249.**

United States Court of Appeals,
Sixth Circuit.

May 28, 2004.

Sunny A. Koshy, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, for Plaintiff–Appellee.

Peter J. Strianse, Tune, Entrekin & White, Nashville, TN, for Defendant–Appellant.

Before NELSON and SUTTON, Circuit Judges; and CALDWELL, District Judge.[*]

SUTTON, Circuit Judge.

A jury convicted Keeda Haynes of aiding and abetting an interstate drug conspiracy involving more than 100 kilograms of marijuana. On appeal, she raises a number of challenges to her trial and sentence. Concluding that none of the challenges rises to the level of reversible error, we affirm.

## I.

After learning of suspicious Western Union wire transfers between Los Angeles and Nashville and between Los Angeles and Memphis, investigating agents uncovered a multi-state marijuana-distribution network that had operated between the cities from January 1997 to December 1999. During that time, participants in the conspiracy sent 2.312 pounds of marijuana from California to Tennessee in 126 packages (mostly through Federal Express), and sent $998.454 in proceeds from the drug sales to California (mostly through Western Union).

Myron Armstrong of Memphis ran the Tennessee portion of the operation. He was responsible for providing his California-based cousins Travis and Sidney Armstrong with addresses for individuals in Tennessee who would be willing to receive marijuana shipments from California and transfer them to three co-conspirators—Nathan Alston, Larry Alston and Marcus Shelton, all of Memphis—who in turn were responsible for transferring the marijuana to designated distributors. Myron Armstrong also had the addresses of individuals in California to whom he and others could wire the proceeds from the marijuana sales.

In January 1999, Myron asked his girlfriend, Keeda Haynes of Nashville, Tennessee, if she would accept Federal Express packages from California (receiving $100 per box) and obtain addresses for others in Tennessee who would be willing to accept packages (also for compensation). Haynes claims that Myron told her the packages would contain cell phones and pagers for a store he operated in Memphis at hours incompatible with Federal Express delivery. She accepted his offer and

---

[*] The Honorable Karen Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

investigation records indicate that some 59 packages, weighing a total of 994 pounds, were sent to addresses associated with her. Though some packages were addressed to fictitious names, Haynes always signed her own name for each package she received.

Haynes also facilitated wire transfers to California of proceeds from the drug sales. On March 30, 1999, Haynes helped Larry Alston send four wire transfers totaling $11.500 to four different California recipients.

Later in the spring of 1999, Haynes recruited her friend Eden Udoumana (also of Nashville) to receive Federal Express shipments from California for $100 a box. On June 10, 1999, Eden was not at her home when the first two packages arrived. Her mother opened one of the packages, found marijuana inside and called the police. When Eden returned home, she called Haynes and Myron Armstrong, demanding an explanation why the packages contained marijuana rather than cell phones and pagers. Haynes called Nathan Alston and directed him to retrieve the packages from Eden's home. Nashville police arrested Nathan when he arrived at Eden's home, then arrested Eden as well.

For three weeks after the arrests. Haynes did not receive any more packages for Myron Armstrong. After this hiatus and after Myron allegedly assured her that no more packages would contain marijuana, Haynes resumed receiving packages, transferring them and being paid $100 per package. In September 1999, when her new job as a meter maid for the county sheriff's department interfered with receiving the packages for Armstrong. Haynes recruited her sister Anitra to receive them in her absence.

Anitra received between 10 and 12 Federal Express packages before police arrested her on October 21, 1999. She even-tually cooperated with the police, leading them to the intended recipients of the packages—the Alstons and Shelton—whom the police subsequently arrested as well. On at least one occasion following Anitra's arrest, Haynes asked her not to tell police about Myron's or her involvement in the operation.

On December 6, 2001, the Government filed a superseding indictment that charged Haynes with (1) conspiring to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. § 846 and in violation of the aiding-and-abetting statute, 18 U.S.C. § 2 (Count 1), (2) conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h) and in violation of the aiding-and-abetting statute, 18 U.S.C. § 2 (Count 2) and (3) criminal forfeiture with respect to both conspiracies (Counts 9 and 10). On May 7, 2002, after a six-day trial, the jury found Haynes not guilty of either conspiracy but found her guilty of aiding and abetting the marijuana-distribution conspiracy. (The Government voluntarily dismissed the forfeiture counts.) Her presentence report recommended a sentencing range of 78 to 97 months, and the district court sentenced her to 84 months followed by a five-year term of supervised release. On appeal she challenges her conviction and sentence on a variety of grounds.

## II.

### A.

■ Haynes first argues that the Government failed to present sufficient evidence to support the aiding-and-abetting conviction. In reviewing a sufficiency challenge, the question is "whether, after viewing all the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from

the testimony, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v. Villarce,* 323 F.3d 435, 438 (6th Cir.2003) (emphasis removed). When it comes to the evidence needed to support this conviction.

> [a]iding and abetting requires that a defendant in some way associate himself with the venture, that he participates in it as something he wishes to bring about, and that he seek by his action to make it succeed. Thus, it has been said that aiding and abetting involves (1) an act by a defendant which contributes to the execution of a crime; and (2) the intent to aid its commission.

*United States v. Lowery,* 60 F.3d 1199, 1202 (6th Cir.1995) (internal quotation and citations omitted).

Adequate evidence showed that Haynes contributed to the conspiracy and intended to facilitate its success. Haynes personally received, or asked others to receive, 59 Federal Express packages weighing a total of 994 pounds. Thirty-eight of these packages came *after* Eden's arrest, when a jury fairly could be skeptical of Haynes' claim that she thought the packages contained cell phones and pagers. Andre McKiver testified that Haynes was being "taken care of" for receiving the packages and for providing addresses of other willing package recipients, JA at 774, and the evidence indeed showed that she received $100 per box. After Eden's arrest, Haynes recruited her sister, Anitra Haynes, to join the operation. Anitra testified that once Haynes learned she was cooperating with police, Haynes asked her to refrain from telling them about Myron's and her · involvement in the operation.

Myron Armstrong and Andre McKiver testified that (1) Haynes knew others in Tennessee received Federal Express packages and sent large amounts of cash to California in return, and (2) she participated in several three-way telephone conversations with them concerning marijuana quantity, quality, price and shipment location. Nathan Alston testified that on the day of Eden's arrest, Haynes called to tell him that marijuana had been discovered in a package shipped to Eden and to ask him to retrieve the shipment immediately. Myron also testified that Haynes was aware of the marijuana-distribution operation not only because of the Eden package, but also because he had told her that Travis Armstrong was shipping marijuana in Federal Express packages and that Nathan Alston and others were involved. Co-defendant Louis Garcia testified that Myron told him Haynes could be trusted, that she knew what she was getting into and that he had explained "everything" to her. JA at 793.

Haynes' reliance on *United States v. Jenkins,* 345 F.3d 928 (6th Cir.2003), does not change this conclusion. In that case as in this one, it is true, the defendant received express-mail packages for a fee, she disclaimed knowing what was in the packages, she was arrested when it was determined that one of the unopened packages contained drugs and the court nonetheless found insufficient evidence to convict. *Id.* at 940. But in this case, unlike *Jenkins,* ample additional evidence permitted a jury to conclude that Haynes knew what she was doing. Whether one considers Haynes' decision to facilitate the receipt of an additional 38 packages *after* Eden's arrest, the testimony of other co-conspirators that Haynes knew that the operation involved marijuana (not cell phones and pagers), the recruitment of her sister to the operation, her intimate relationship with one of the conspiracy's leaders, her recruiting of others to join in the operation or her plea to her sister that she withhold her name from police, considerable evi-

dence distinguishes this case from *Jenkins* and would permit a jury to find that Haynes aided and abetted the drug conspiracy.

### B.

#### 1.

Haynes next challenges the jury instruction on aiding and abetting. "A proper objection to a jury instruction is made when the subject of the objection and its grounds were identified with sufficient precision to give the district court a full understanding of its nature." *United States v. Busacca,* 863 F.2d 433, 435 (6th Cir.1988). Haynes initially made a general objection to the district court's aiding-and-abetting instruction, but failed to give a basis for doing so and failed to offer a meaningful alternative instruction. After closing arguments when the district court asked if there was "[a]nything else anybody wants to say about instructions," her attorney responded, "No, your honor," JA at 961A. Because Haynes did not "give the district court a full understanding" of the "nature" of her objection, we review for plain error. *See United States v. Davis,* 306 F.3d 398, 413 (6th Cir.2002). "[A]n instruction is not plainly erroneous unless there was an 'egregious error, one that directly leads to a miscarriage of justice.'" *Id.* (citation omitted).

■ No such error occurred. In its instructions, the district court read to the jury 18 U.S.C. § 2, the aiding-and-abetting statute, then read to the jury the Sixth Circuit Pattern Jury Instruction for aiding and abetting, which explains that even if the jury found that Haynes did not commit the crime charged, it still could find her guilty if it determined that "the crime as alleged ... was committed ... [and that she] aided, abetted ... or procured someone else to commit the crime ... [and]

that [she] intended to help commit or encourage the crime." JA at 961H—I; *see* 6th Cir. Pattern Crim. Jury Instr. 4.01 (1991). Because the jury instruction accurately incorporated the pertinent federal statute and accurately incorporated a pattern jury instruction that is consistent with circuit precedent on the elements of aiding and abetting, *see Lowery,* 60 F.3d at 1202, it was not plainly erroneous.

#### 2.

■ Haynes next argues that the district court erred in giving a deliberate ignorance jury instruction because (1) there was insufficient evidence to prove it, (2) it should not have been offered in conjunction with the aiding-and-abetting instruction and (3) it permitted the jury to convict on proof of mere negligence. All three claims are unavailing.

Haynes first claims that the district court should not have instructed the jury on deliberate ignorance because the evidence failed to show that she attempted to escape conviction "by deliberately closing [her] eyes to the obvious risk that [s]he [was] engaging in unlawful conduct." *United States v. Gullett,* 713 F.2d 1203, 1212 (6th Cir.1983). A district court has broad discretion in drafting jury instructions and does not abuse its discretion unless the jury charge fails accurately to state the law. *See United States v. English,* 925 F.2d 154, 158 (6th Cir.1991). We will reverse a judgment based upon an inaccurate jury instruction "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Harrod,* 168 F.3d 887, 892 (6th Cir.1999). At least once before, we also have observed that the delivery of a properly-worded deliberate ignorance instruction, which is not supported by the evidence, amounts at most to harmless error.

*United States v. Mari,* 47 F.3d 782, 785—86 (6th Cir.1995).

In this instance, the instruction was accurate and factually supported. The district court used the Sixth Circuit's pattern jury instruction on deliberate ignorance, *see* 6th Cir. Pattern Crim. Jury Instr. 2.09, which accurately states the law of this Circuit, *United States v. Beaty,* 245 F.3d 617, 622 (6th Cir.2001). And an adequate evidentiary basis existed for the instruction because the jury could well have concluded that Haynes deliberately did not open any of the packages in order to avoid acquiring actual knowledge of their contents.

Haynes' second claim is that the district court should not have given the deliberate ignorance instruction in concert with the aiding-and-abetting instruction or, if giving it was proper, that its applicability should have been limited only to the "substantive offenses." Appellant's Br. at 48. New on appeal, this claim is reviewed for plain error. *Davis,* 306 F.3d at 413, and is rejected. First, Haynes does not offer and we have not found any authority to support this proposition. Second, violation of the aiding-and-abetting statute was in fact a substantive offense in the indictment. Third, under both jury instructions, the Government had to prove the defendant had knowledge of the crime. There is no reason proof of this knowledge cannot be used to satisfy the elements of either instruction.

Haynes also argues that the district court's deliberate ignorance instruction permitted the jury to convict her on proof of mere negligence. She fails to account for our decision in *Beaty,* however, which rejected a similar contention after the Circuit's pattern jury instruction for deliberate ignorance had been used. 245 F.3d at 622.

## C.

■ Haynes next invokes the Double Jeopardy Clause of the Fifth Amendment, claiming that the Government twice put her in peril of being punished for the same offense. By charging her as a member of the marijuana-distribution conspiracy on the one hand and as aiding and abetting the same conspiracy on the other, she urges, the Government violated her rights under the Double Jeopardy Clause. Having failed to raise this issue before the district court, she must show plain error to succeed. *Davis,* 306 F.3d at 416—17.

The question in this constitutional setting is "whether each offense contains an element not contained in the other." *United States v. Forman,* 180 F.3d 766, 768 (6th Cir.1999). "A defendant will be considered placed in double jeopardy only if every violation of one statute entails a violation of another." *Id.* (citation and quotation marks omitted). An impermissible overlap in the charges did not occur here. The indictment does not contain a separate count for aiding and abetting the conspiracy; it merely cites 18 U.S.C. § 2 as an alternative ground for establishing the single conspiracy count. *Cf. United States v. Lester,* 363 F.2d 68, 72 (6th Cir. 1966) ("All indictments must be read in effect, then, as if the alternatives provided by 18 U.S.C. § 2 were embodied in each count thereof."). When the district court instructed the jury on the elements of conspiracy and the elements of aiding and abetting a conspiracy, moreover, it made clear what had been apparent upon the filing of the initial indictment: the citation to 18 U.S.C. § 2 in the indictment was an alternative, not a cumulative, theory of prosecution. As the jury instruction explained, "If you have found the defendant guilty as a principal of the specific crimes of conspiracy ... in accordance with these instructions, then you cannot also find

[her] guilty of aiding and abetting in the commission of those crimes." JA at 961H.

### D.

■ Haynes next argues that the verdict form was constitutionally defective because it was "ambiguous" and "did not require foreseeability" of the drug quantity involved. Appellant's Br. at 38—39. According to Haynes, the district court should have submitted a special verdict form that "required a specific finding of a *reasonably foreseeable* drug quantity and additionally required the jury to specify a precise amount of drugs (rather than simply a range of quantities)" in the conspiracy. *Id.* at 38.

"Generally, the verdict form should repeat and highlight the issues covered in the jury charge and should be couched in the same terms as the jury instructions. The instructions and the verdict form should be considered together to determine whether they presented the issues to the jury in a clear and fair manner." *Hickson Corp. v. Norfolk S. Ry. Co.,* 260 F.3d 559, 568 (6th Cir.2001). In this instance, the relevant conspiracy jury instruction did not require the Government to establish the amount of drugs involved or the amount of drugs that was "reasonably foreseeable" to Haynes, and accordingly it was wholly appropriate for the district court not to add this gloss to the verdict form.

### E.

Haynes, lastly, argues that the district court erred in sentencing her (1) by failing to reduce her base offense level by three points due to her alleged mitigating role in the criminal offense and (2) by adding two points to her base offense level for obstruction of justice. "In reviewing a district court's application of the Sentencing Guidelines, we 'accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts.'" *United States v. Webb,* 335 F.3d 534, 536—37 (6th Cir.2003) (quoting 18 U.S.C. § 3742(e)).

### 1.

Section 3B1.2 of the Sentencing Guidelines provides a four-point base offense level reduction for an offender who minimally participates in the criminal activity, a two-point reduction for an offender whose participation is minor and a three-point reduction for an offender whose conduct falls somewhere in between. Defendants must prove that they deserve a base offense level reduction by a preponderance of the evidence. *United States v. Kingston,* 922 F.2d 1234, 1240 (6th Cir.1990).

■ The evidence showed that Haynes (1) received a large number of Federal Express packages from California marijuana source Travis Armstrong, (2) was generously compensated for transferring those packages to Nathan Alston and others and for supplying addresses of other potential package recipients, (3) knew large sums of money were being wired back to California in return for the packages and (4) helped recruit others to join the operation. After considering this and other evidence, the district court rejected Haynes' request for an offense-level reduction and rejected the Government's request for an offense-level increase, finding that Haynes was "basically a middle person carrying out the requests of Myron Armstrong and others who were running the operation.... She really didn't control anybody else," JA at 962A—63. Given the above evidence supporting this conclusion, the district court did not err in rejecting Haynes' request for an offense-level reduction.

## 2.

 Section 3C1.1 of the Sentencing Guidelines provides a two-point base level enhancement if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and [ ] the obstructive conduct related to [ ] the defendant's offense of conviction and any relevant conduct." When Haynes told Myron Armstrong that Anitra had been arrested and was cooperating with the police, Armstrong instructed Haynes to tell her sister not to say anything about the involvement of Armstrong or Haynes in the operation. Haynes followed through on the request, and the district court found an obstruction of justice because "[s]he was attempting to unlawfully influence her sister's testimony." JA at 964D. As the evidence supported that conclusion and the sentencing enhancement that followed from it. Haynes cannot tenably challenge her obstruction of justice enhancement.

## III.

For the foregoing reasons, we affirm.