NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0649n.06

Case Nos. 06-2627, 07-1003, 07-1163, 07-1167, 07-1253, 07-1304

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Sep 21, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| NASSIB SAADALLAH BERRO, | ) | DISTRICT OF MICHIGAN |
| ABDULAMIR BERRO, | ) | |
| AKRAM ABDUL KARIN BERRO, | ) | |
| JAMAL SAADALLAH BERRO, | ) | |
| SADEK BERRO, and | ) | |
| ALI ABDUL-KARIM FARHAT, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

BEFORE:  BATCHELDER, Chief Judge; SUHRHEINRICH and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge.  These cases, consolidated for appeal, involve several family members who pled guilty to their involvement in a credit card fraud scheme and now challenge their individual sentences.  For the reasons that follow, we AFFIRM.

**I.**

We review the district court's sentencing decisions under an abuse-of-discretion standard, for reasonableness.  *United States v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009) (quoting *Gall v. United States*, ---- U.S. ----, 128 S.Ct. 586, 594 (2007)); *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007).  We "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as

mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Gall*, 128 S.Ct. at 597. If the sentence is procedurally sound, we "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* We apply a presumption of reasonableness to sentences within the applicable guidelines range. *Id.*

## II.

**Nassib Berro (Case No. 06-2627)**

On August 9, 2006, Nassib Berro pled guilty, pursuant to a Rule 11 plea agreement, to one count of conspiracy to commit bank and mail fraud in violation of 18 U.S.C. § 371. At his sentencing hearing on December 12, 2006, Nassib asked the district court to grant him a downward departure based on his poor health, suggesting home confinement might be appropriate. While explaining that it was sympathetic to Nassib's medical problems, the court nonetheless determined that those problems should have no impact on his sentence. After finding the applicable guideline range to be 41 to 51 months, the court sentenced Nassib to 41 months' imprisonment.

On appeal, Nassib argues that the district court should have suppressed certain evidence against him because it was obtained in violation of his rights under the Fourth and Fifth Amendments. But Nassib pled guilty, without conditioning his plea on his maintaining the right to appeal the denial of his suppression motions; he has therefore waived the right to appeal these denials. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent

2

character of the guilty plea.").

Nassib also argues that the court gave insufficient attention to whether his poor health qualified as an "extraordinary" condition warranting a downward departure. His plea agreement, however, provides that he "waives any right he has to appeal his conviction or sentence" if his sentence does not exceed 41 months. This fact alone warrants dismissal of Nassib's sentencing appeal. *See United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) ("When a [d]efendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances." (quoting *United States v. Stubbs*, 279 F.3d 402, 410 (6th Cir. 2002)). But the waiver issue has not been raised by the government or briefed by the parties, *see United States v. Caruthers*, 458 F.3d 459, 477 (6th Cir. 2006) (McKeague, J., concurring) (avoiding waiver issue where it had not been adequately raised by the parties), and our previous decisions have left some uncertainty about whether an appellate waiver deprives us of jurisdiction, *compare Caruthers*, 458 F.3d at 472 n.6 (appellate waivers should not be labeled jurisdictional) *with United States v. McGilvery*, 403 F.3d 361, 362-63 (6th Cir. 2005) (holding that we lacked jurisdiction to consider an issue waived in a plea agreement). For these reasons, we will consider the merits of Nassib's argument. As we have before, however, we "strongly encourage" the government in future cases "to promptly file a motion to dismiss the defendant's appeal where the defendant waived his appellate rights as part of a plea agreement, and to attach a copy of the appellate-waiver provision and the transcript of the plea colloquy showing the district court's compliance with Rule 11(b)(1)(N)." *McGilvery*, 403 F.3d at 363.

On the merits, we reject Nassib's argument that the district court did not properly assess his health as a sentencing factor. U.S.S.G. § 5H1.4 provides:

3

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

We have held that "age and health are disfavored factors that the district court may use as bases for granting a downward departure only in exceptional circumstances." *United States v. Bostic*, 371 F.3d 865, 875 (6th Cir. 2004). Here, Nassib explained that he had heart problems, orthopedic problems, diabetes, and possibly prostate cancer. The court responded: "I say to you that I am sympathetic with regard to whatever physical or medical problems you have, and that the last thing this court wants to do is to exacerbate or put you in a position where those problems cannot be addressed." Even so, the court noted that "medical problems don't, however serious they may be with the individual, have any impact on the issue of when and how and where and for how long somebody is sentenced." Although he emphasized the acute nature of some of his ailments, Nassib offered no evidence that the Bureau of Prisons would not be able to accommodate his medical needs or that home confinement would be as efficient or less costly than imprisonment. Because the district court did not abuse its discretion, we affirm Nassib's conviction and sentence.

**Abdulamir Berro (Case No. 07-1003)**

On August 3, 2006, Abdulamir Berro pled guilty, pursuant to a Rule 11 plea agreement, to one count of conspiracy to violate the provisions of 18 U.S.C. § 1962. During the plea colloquy, the district court asked the Assistant United States Attorney ("AUSA") to recite the relevant terms of the plea agreement. The AUSA did so, finishing by noting that "so long as the sentence does not exceed 97 months, the Defendant would waive any right he has to appeal his conviction or sentence." The court then asked Abdulamir: "And do you find this [an] accurate recitation, Mr. Berro, of the

4

terms of the plea agreement you signed?" Abdulamir replied: "Yes, your Honor." The court did not specifically ask Abdulamir if he understood that he was waiving his appeal rights.

On December 4, 2006, the government filed a U.S.S.G. § 5K1.1 motion for a downward departure based on Abdulamir's substantial assistance. Specifically, the government recommended a 74-month sentence — a 15% reduction from the midpoint of the applicable guideline range. The next day, at Abdulamir's sentencing hearing, the district court indicated that it would "grant the 5K1.1 motion . . . without necessarily adopting the Government's recommendation." Abdulamir's counsel asked for a sentence of 48 months, arguing that: 1) the guidelines artificially inflated the amount of loss; 2) the government's recommendation for a 15% sentence reduction underestimated the value of Abdulamir's assistance; and 3) Abdulamir's family circumstances warranted a downward departure. The court sentenced Abdulamir to 70 months' imprisonment — a sentence 2 months under the government's recommendation and 22 months over Abdulamir's request.

On appeal, Abdulamir argues that the district court did not adequately explain why it was rejecting his request for a lower sentence of 48 months' imprisonment. Abdulamir also contends that his sentence is unreasonable when compared to his co-defendants' sentences. The government responds that Abdulamir's appeal should be dismissed because he waived his right to appeal his sentence if it did not exceed 97 months. Abdulamir, in turn, insists that the court did not comply with Federal Rule of Criminal Procedure 11(b)(1)(N) by questioning him to make sure he understood the appellate-waiver provision of his plea agreement. Because Abdulamir did not object below, his appeal is subject to plain-error review. *See United States v. Sharp*, 442 F.3d 946, 949-50 (6th Cir. 2006).

In *Sharp*, we addressed a similar situation and held that a defendant had effectively waived

5

his appeal rights. The district court in *Sharp* asked the prosecutor to explain the appellate-waiver provision in the plea agreement, and the prosecutor summarized the relevant paragraph. *Id.* at 949. In explaining the waiver, the prosecutor stated simply that "the plea agreement contains a waiver of Mr. Sharp's appellate rights and post-conviction remedies." *Id.* The prosecutor then outlined several appellate rights that the defendant had expressly retained. *Id.* Although the district court did not follow the prosecutor's explanation by asking Sharp if he understood the precise terms of the appellate-waiver provision, we nonetheless held the waiver valid, noting that while "Rule 11 requires that the district court ascertain that the defendant understands the terms of the plea agreement, [] it does not require that the district court ask a particular question about the appellate-waiver provision." *Id.* at 951. We found that the record sufficiently indicated "that Sharp understood the terms of the plea agreement. Not only did Sharp sign the agreement, but he also testified in open court that he understood its terms and had ample opportunity to discuss it with his attorney." *Id.*

Here, the AUSA finished his recitation of the plea agreement's terms by stating: "[S]o long as the sentence does not exceed 97 months, the Defendant would waive any right he has to appeal his conviction or sentence." This explanation is at least as clear as that provided by the prosecutor in *Sharp*. And although the district court did not specifically refer to the appellate-waiver provision, it immediately asked Abdulamir if he found the AUSA's recitation to be accurate. And Abdulamir affirmed in open court that he had signed the agreement and that his willingness to plead guilty was "based in part at least on the fact that [he] and [his] lawyer were able to negotiate this agreement with the Government[.]" It was not plain error for the district court to accept the appellate-waiver provision of the plea agreement, and Abdulamir has thus waived his ability to challenge his sentence, which fell well under the 97 months specified in that provision.

**Akram Berro (Case No. 07-1163)**

On July 25, 2006, Akram Berro and his wife, Jamal, pled guilty — without a Rule 11 plea agreement — to several counts of fraud and conspiracy. At that time, only one other co-defendant had pled guilty. In its motion for a downward departure, the government acknowledged Akram's willingness to testify at trial and recommended a sentence of 44 months — a 15 percent reduction from the midpoint of the applicable guideline range. The presentence investigation report ("PSR") calculated Akram's guideline range to be 46-57 months; this range was based on an offense level of 23, which took into account a two-level reduction for acceptance of responsibility.

At his sentencing hearing on January 18, 2007, Akram argued for a downward departure resulting in a final sentence of 28 months. Akram based this proposed sentence on his assistance to the government, his alcohol and gambling addictions, his overall poor health, and his family situation. The district court determined the applicable guideline range to be 46-57 months and granted the government's departure motion, imposing a 44-month sentence.

On appeal, Akram first argues that the district court erred in not granting him an additional one-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. Whether a defendant has accepted responsibility is a factual finding that "should not be disturbed unless clearly erroneous." *United States v. Webb*, 335 F.3d 534, 537 (6th Cir. 2003). Moreover, "even after *Booker*, a district court consulting the guidelines remains constrained in awarding a § 3E1.1(b) reduction absent a motion by the government." *United States v. Smith*, 429 F.3d 620, 628 (6th Cir. 2005). Here, the government did not make such a motion. Akram argues that the government's motion for a downward departure should be construed as a § 3E1.1 motion because "it acknowledges the possibility that his guilty plea impacted the decision of others to plead guilty." This argument

7

is without merit. The fact that the government viewed Akram's guilty plea as having some effect on the willingness of other co-defendants to later plead guilty does not mean that the government viewed Akram's acceptance of responsibility as extraordinary. In fact, the government noted at sentencing that Akram did not enter his plea until the day before trial.

Akram next argues that his sentence is procedurally unreasonable because the district court did not recognize that it had the discretion to grant a greater downward departure than that requested by the government. Akram contends: "The district court's comments indicate that it believed it was constrained by the Government's departure recommendation and was unable to grant any further reduction." Although Akram does not identify these "comments," he presumably is referring to the following statement by the district court:

> I understand your [Akram's] argument [on why a greater downward departure was warranted]. I appreciate your argument, and standing by itself, it's a persuasive argument, but I — neither this judge nor any other judge is in a position ever in these cases to make a judgment that the Government lawyers have to make with regard to the value or lack of value of cooperation or of any other activity that a defendant involves him themselves [sic] in, which speaks to the question of a 5K1.1 motion. And I just — I mean, we can talk all day about the relative impact it urged, or whatever it might be, of Mr. Berro's willingness to plead at the time that he was willing to plead, as compared with somebody who went much earlier than that. And I don't have any factual basis upon which I can make that determination, except to turn to [the AUSA] and ask her how much did it help the Government get the case to this point.

This statement does not indicate that the district court thought it lacked the legal authority or discretion to grant more of a departure than the government had asked for. Rather, the court indicated that it based its determination on the government's assessment of the quality of Akram's assistance.

Akram also argues that his sentence is procedurally unreasonable because the district court

did not adequately consider his first offender status, his alcohol and gambling addictions, his poor health, or his family responsibilities. The record, however, shows that the district court did consider these factors. The court took Akram's "first offender" status into account in finding a criminal history category of I. The court stated that although it was "certainly sympathetic" with Akram's alcohol addiction, an addiction was not "the way out of criminal behavior or the way to minimize the impact at sentencing[.]" The court indicated that it would recommend to the Bureau of Prisons that Akram serve his sentence in a federal medical facility. Finally, the court indicated that while it had considered Akram's request to "stagger" his and his wife's sentences, "it's going to be hard to persuade me that the logistics of it could work."

Akram's final argument is that his sentence is substantively unreasonable in light of the above considerations and the 18 U.S.C. § 3553 factors. "A sentence is substantively unreasonable, according to this court, if 'the district court selected the sentence arbitrarily, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor.'" *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009) (quoting *United States v. Smith*, 510 F.3d 603, 609 (6th Cir. 2007)). Akram has not shown any basis for us to say that the district court abused its discretion in imposing a sentence of 44 months — two months under the low end of the applicable guideline range. Accordingly, we affirm his sentence.

**Jamal Berro (Case No. 07-1167)**

In her sentencing memorandum and at the sentencing hearing, Jamal Berro requested to be placed on probation only, given her lack of a criminal record, her early guilty plea, her relatively minor role in the offense, and the pressure placed on her by her family and culture to follow her male family members. The district court, however, imposed a 46-month sentence — the low end of the

9

applicable guideline range of 46-57 months.

Jamal argues that her sentence is "harsh and excessive," which amounts to a claim that her sentence is substantively unreasonable. We may presume the reasonableness of her within-Guidelines sentence, *Gall*, 128 S.Ct. at 597, and Jamal has offered nothing to overcome that presumption other than her own assessment that the sentence is too much. She has not alleged, much less shown, that the court arbitrarily selected her sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553 factors, or gave undue weight to any factor. *See Carson*, 560 F.3d at 585.

Jamal further argues that she should have received a two-level reduction for being a minor participant in the criminal activity under U.S.S.G. § 3B1.2(b). She also contends that the district court did not adequately consider that she was at "no risk of recidivism" due to her family situation and her age. Jamal's "minor participant" argument lacks merit because the PSR calculated the loss due to her conduct to be nearly $1 million. As for her recidivism argument, the court specifically noted that it appreciated that Jamal faced an "unusually difficult" circumstance in living in a family and culture where there might be domination by males over females. Moreover, it is unclear how her family situation shows that she is at no risk of recidivism, as she does not claim that these family pressures will somehow be absent or diminished in the future. And given that several of the defendants in this case are senior adults, her advanced age does not show there is no need for deterrence. We therefore affirm her sentence.

**Sadek Berro (Case No. 07-1253)**

On August 11, 2006, Sadek Berro executed a Rule 11 plea agreement in which he agreed to plead guilty to one count of conspiracy to commit bank and mail fraud in violation of 18 U.S.C. §

371. Section 2.B of the agreement stipulated that Sadek's guideline range was 78-97 months. Section 5 recited that "the government shall file a motion recommending a downward departure at sentencing under U.S.S.G. § 5K1.1 and will recommend that the defendant be sentenced to a term of 68 months' imprisonment." Section 8 provided: "If the Court accepts this agreement, it must comply with all of its terms." Finally, Section 9 provided that if Sadek's sentence did not exceed 97 months (or the upper limit of the applicable guideline range if the court were to determine that Sadek's criminal history score was higher than reflected in the worksheets attached to the agreement), Sadek waived his right to appeal his conviction or sentence.

In its sentencing memorandum, the government asked the court to grant a downward departure and specifically recommended a sentence of 68 months. At Sadek's sentencing hearing, the AUSA stated: "[W]e don't believe that he should get any credit beyond the 19 months that the Government has recommended through its motion for a downward departure." Although "Worksheet A" attached to the plea agreement listed the number of victims as "more than 10" with a corresponding 2-level upward adjustment, the PSR set the number of victims at more than 50, with a corresponding 4-level upward adjustment. The district court found "the facts [as] set out in the presentence report" and determined the guideline range to be 97 to 121 months. The court then imposed a sentence of 78 months — a 19-month downward departure from the bottom of the guideline range found by the court.

The government contends that Sadek has waived his right to appeal because his sentence did not exceed 97 months. Sadek responds that his waiver should not be enforced because the government breached the agreement by not recommending a 68-month sentence, and because the district court did not abide by the stipulated terms of the plea agreement.

11

"This Court reviews the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement de novo." *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005) (quoting *United States v. Smith*, 344 F.3d 479, 483 (6th Cir.2003)). "Plea agreements are contractual in nature. In interpreting and enforcing them, we are to use traditional principles of contract law." *United States v. Robison*, 924 F.2d 612, 613 (6th Cir.1991) (citations omitted). "[A]ny ambiguities in the language of a plea agreement must be construed against the government." *United States v. Randolph*, 230 F.3d 243, 248 (6th Cir.2000) (citation omitted).

First, we reject Sadek's argument that the government breached its duties under the plea agreement. Although we normally employ de novo review in determining whether the government has violated the terms of a plea agreement, *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000), Sadek did not object to any purported violation at the sentencing hearing. Our review, therefore, is for plain error. *United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir. 2004). In its sentencing memorandum, the government specifically recommended a sentence of 68 months. At the sentencing hearing, the AUSA recommended no more than the "19 months *that the Government has recommended through its motion for a downward departure*." (Emphasis added). These recommendations can be reconciled by the fact that 68 months would have been 19 months fewer than the midpoint of the guideline range to which the parties stipulated in the plea agreement. Although the district court later found a higher guideline range and departed 19 months from the midpoint of that range, the government fulfilled its obligation to ask for a 68-month sentence.

Next, we reject Sadek's argument that the district court's failure to either (1) abide by the sentencing range recited by the plea agreement or (2) allow Sadek to withdraw his guilty plea once the court found a higher range to be applicable vitiates his waiver of appeal and constitutes an

12

additional ground for reversal. Although the court applied a higher guideline range than that stipulated in the plea agreement, the 78-month sentence actually imposed by the court would have fallen at the very bottom of the stipulated range. There is no prejudice here that would entitle Sadek to avoid his waiver or that would warrant a reversal of his sentence.

**Ali Farhat (Case No. 07-1304)**

On July 31, 2006, Ali Farhat, pursuant to a Rule 11 plea agreement, pled guilty to one count of conspiracy to violate 18 U.S.C. § 1962. At Farhat's sentencing hearing on February 21, 2007, the district court calculated the guideline range to be 78 to 97 months, granted the government's motion for a downward departure, and sentenced Farhat to 74 months' imprisonment.

Sections 3 and 8 of Farhat's plea agreement provide that if his sentence does not exceed 97 months, he "waives any right he has to appeal his conviction or sentence." As we did with appellant Nassib Berro, however, we will move on to the substance of Farhat's arguments because the government has not moved to dismiss the appeal or argued that Farhat has waived his sentencing issues.

Farhat first argues that his sentence is substantively unreasonable because his assistance to the government warranted a greater downward departure. Farhat does not argue that the district court indicated that it lacked the discretion to depart to a greater extent than the government requested. "When 'the district court grants a downward departure for substantial assistance and the defendant's claim on appeal goes only to the extent of the departure, this Court has no jurisdiction over the appeal.'" *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) (quoting *United States v. Jones*, 417 F.3d 547, 551 (6th Cir.2005)); *see also United States v. Puckett*, 422 F.3d 340, 345 (6th Cir.2005). Because Farhat challenges only the extent of the district court's downward departure, we

13

lack jurisdiction to consider this argument on appeal.

Farhat next argues that his sentence is procedurally unreasonable because the district court failed to give appropriate consideration to the 18 U.S.C. § 3553 factors. "District courts may exercise discretion in determining how much of an explanation of the sentence is required because 'the amount of reasoning required varies according to context.'" *United States v. Jeross*, 521 F.3d 562, 583 (6th Cir. 2008) (quoting *United States v. Liou*, 491 F.3d 334, 338 (6th Cir.2007)). "A district court 'need not recite [the] § 3553(a) factors,' nor engage in 'the ritual incantation of the factors' in order for the appellate court to affirm a sentence." *Id.* (citations omitted). "The sentencing judge must, however, at least 'set forth enough [explanation] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, ___, 127 S.Ct. 2456, 2468 (2007)).

Here, the court did not recite each of the § 3553 factors; it instead stated that it was "aware of the many different kinds of considerations that it can properly make under 3553(a) and has attempted to take all of those things into consideration." The court specifically noted that it had considered "the relationship of Mr. Farhat's sentence to the other defendants who have come before the Court" and had "thought about the fact that while Mr. Farhat certainly had a great deal to say and a lot of this was helpful . . . he had been in the position where he had a lot to do with what happened, and those kind of considerations work in cross purposes." The court concluded by noting that it had "tried to consider everything that has been brought specifically to my attention by the Government, and since his client is being sentenced today, by Mr. Minock, this afternoon, and anything else that is placed before the Court by the provisions of 18 United States Code 3553(a)." As Farhat can point

14

to no factor that the court did not adequately address, we hold that his sentence is procedurally reasonable.

## III.

Accordingly, we **AFFIRM** the district court's judgment and sentence as to all appellants.