NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 18a0189n.06

Case No. 17-6042

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Apr 10, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JOSE REMEDIOS ARELLANES-PENA, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, SUTTON, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. Jose Remedios Arellanes-Pena and four others shepherded a lot of methamphetamine from Arizona to a buyer in Kentucky. When the buyer turned out to be a DEA informant, the government charged Arellanes-Pena and his co-defendants with conspiring to distribute the drug. Arellanes-Pena pleaded guilty, and the district court sentenced him to 210 months based in part on his role as a "leader" of the conspiracy. Arellanes-Pena claims he does not deserve that distinction or the two-point guidelines enhancement that comes with it. We disagree and affirm.

In 2016, DEA agents monitored phone calls between Arellanes-Pena and a drug dealer in Mexico known as "Beto." A confidential informant told agents that Beto had offered to sell between nine and fifteen pounds of methamphetamine at a truck stop in Florence, Kentucky.

The informant agreed to buy. Arellanes-Pena called to arrange the details. On May 28 and 29, 2016, Arellanes-Pena provided updates about the shipment's progress from Arizona.

Around 3:30 P.M. on May 29, Arellanes-Pena called to say that his group had arrived. Moments later, agents observed two vehicles with Arizona plates—a Taurus and a Camaro—on I-75. The Taurus met the informant at a gas station, and the Camaro parked at a truck stop across the street. When the informant approached Arellanes-Pena in the passenger seat of the Taurus, the two of them agreed to move the meeting to a Korean restaurant next door to avoid the unwanted gaze of the gas station's cameras. Arellanes-Pena instructed Jonathan Osorio Uriarte (a passenger in the Taurus) to tell Jose Ignacio Varelas-Losoya and Luis Espino (the individuals in the Camaro) to meet him at the restaurant. Uriarte did as he was told, and so did Losoya and Espino.

Arellanes-Pena got in the informant's car. He explained that the meth crystals were high quality, but that he had pieced together several batches to reach the agreed-upon nine pounds. He said that he had fifteen kilograms of cocaine in New York and hundreds of pounds of marijuana in Arizona. And he asked "how far Kansas City was from Cincinnati" because he "had to resolve a problem" there after a couple had stolen some methamphetamine and killed an associate. R. 287 at 10. Arellanes-Pena retrieved a sample from a cooler in the Camaro and returned to the informant's car. DEA agents swooped in. They arrested all five individuals and seized eight pounds of methamphetamine and the phone that Arellanes-Pena used to set up the sale.

A grand jury indicted Arellanes-Pena and his associates. Count 1 charged them with conspiring to distribute at least 500 grams of meth, 5 kilograms of cocaine, and 100 kilograms of marijuana. *See* 21 U.S.C. §§ 841(a)(1), 846. Count 2 charged them with aiding and abetting the

offense. *See* 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1). Arellanes-Pena asked the court to suppress evidence from his cell phone and the informant's recording of their May 29 conversation in the car. The court denied the motion without prejudice. Arellanes-Pena pleaded guilty to Count 1 without a written plea agreement.

The pre-sentence report gave Arellanes-Pena an offense level of 35 and a criminal history category of I, yielding a guidelines range of 168 to 210 months. He objected to a two-point enhancement based on his status as a "leader" of the criminal enterprise. U.S.S.G. § 3B1.1(c). At sentencing, the district court heard from Ken Baker, one of the arresting DEA agents. He testified that Arellanes-Pena had recruited his co-defendants on this occasion (and on previous ones), agreed to pay them, and instructed them during the transaction. Each co-defendant corroborated that "Pena coordinated everything." R. 287 at 12–13. Arellanes-Pena offered little to rebut this evidence. Even though he had already pleaded guilty, he insisted that he had simply "brought a cooler [full of] shrimp and fish" from Arizona to a party in Kentucky—a nearly 30-hour drive—without any dry ice. *Id.* at 36. After listening to arguments from Arellanes-Pena's lawyer and the government, the court rejected Arellanes-Pena's argument, added the leadership enhancement, and sentenced him to 210 months.

On appeal, Arellanes-Pena argues that (1) the district court abused its discretion by denying his pre-trial motion to suppress, (2) insufficient evidence supports the two-point leadership enhancement, and (3) the 210-month sentence is substantively unreasonable.

*Pre-trial motion to suppress.* Arellanes-Pena waived any challenge to the district court's pre-trial suppression ruling. To preserve that right, he needed to enter "[1] a conditional guilty plea in writing [2] that reserves the right to appeal a specified pre-trial motion and [3] that evidences the government's consent." *United States v. Bell*, 350 F.3d 534, 535 (6th Cir. 2003);

Fed. R. Crim. P. 11(a)(2). Arellanes-Pena did no such thing. At rearraignment, he pleaded guilty unconditionally in open court. *See United States v. Bacon*, --- F.3d ----, 2018 WL 1190144, at *3 (6th Cir. Mar. 8, 2018). Although the government offered him a written agreement, "he reviewed it and decided not to accept it." R. 285 at 16.

*Leadership enhancement.* Arellanes-Pena preserved his objection to the leadership enhancement under U.S.S.G. § 3B1.1(c). The meaning of the enhancement is a question of law, but its application "depends on a number of factual nuances." *United States v. Washington*, 715 F.3d 975, 982 (6th Cir. 2013). That means we apply "deferential" review. *Id.*; *see also Buford v. United States*, 532 U.S. 59, 64 (2001) (U.S.S.G. § 4B1.2); *United States v. Webb*, 335 F.3d 534, 538 (6th Cir. 2003) (U.S.S.G. § 3E1.1). What that means has not always been clear. But the Supreme Court recently added some clarity to the point. If answering a question "entails primarily . . . factual work," it held, we review for clear error. *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967, 969 (2018).

At stake in this case were mainly factual questions, and the district court did not clearly err in resolving them. A defendant qualifies for the enhancement if he was a leader of "one or more [of the] other participants." U.S.S.G. § 3B1.1 cmt. 2. To make that determination, courts look to a host of factors, including the nature and degree of the defendant's participation, planning, and control, and whether he exercised decision-making authority, recruited accomplices, or claimed an entitlement to a greater portion of the spoils. *Id.* § 3B1.1 cmt. 4.

From the beginning, Arellanes-Pena recruited his co-defendants to the conspiracy and promised to pay them $800 per pound. That reality alone is "legally sufficient to support the § 3B1.1[] enhancement." *United States v. Castilla-Lugo*, 699 F.3d 454, 460–61 (6th Cir. 2012). There is more. The court also heard evidence about Arellanes-Pena's decision-making,

participation, and planning. During the transaction, the informant communicated only with Arellanes-Pena, and Arellanes-Pena gave instructions to his co-defendants. He chose to move the location of the meeting. He instructed Losoya and Espino to bring the loaded car. And he retrieved the sample for the buyer. Arellanes-Pena's private conversation with the informant confirms what other evidence suggests. As the district court found, his statements that he had pieced together the shipment, had large quantities of other drugs available, and needed to deal with "a problem" in Kansas City show familiarity with "intimate details" that an underling would not be apt to possess. R. 287 at 32.

Arellanes-Pena counters that he was merely an errand boy for Beto, the true leader of the enterprise. At most, he says, he was like a FedEx courier who takes a package from point A to point B. That Beto would qualify as a leader of this conspiracy does not mean that Arellanes-Pena cannot qualify as one. An illegal enterprise, like a legal one, may have more than one leader. *United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009) (citing U.S.S.G. § 3B1.1 cmt. 4). That's why the guidelines create different enhancements for different degrees of leadership. *See* U.S.S.G. § 3B1.1(a) (four points), (b) (three points), (c) (two points). Arellanes-Pena's analogy at all events suits his co-defendants more than it suits him. They got in a car, drove where they were told, and delivered what they had. By contrast, Arellanes-Pena (as the district court aptly reasoned) was more like the manager of a trucking company who recruits drivers, pays them, coordinates their timetables, and meets customers.

Arellanes-Pena objects that the district court credited Agent Baker's testimony over his own. But that is a credibility determination, and that means, absent something unusual, we will defer to the district court because it "is in the best position" to determine whom to believe when conflicting accounts arise. *Washington*, 715 F.3d at 983–84. The court had ample reasons not to

5

take Arellanes-Pena's testimony seriously. A court faced with his shrimp-and-fish tale could discount that story and just about everything else he said.

*Substantive reasonableness.* Arellanes-Pena separately argues that his 210-month sentence is substantively unreasonable because the district court failed to consider "the need to avoid unwarranted sentencing disparities." 18 U.S.C. § 3553(a)(6). He points to his co-defendants' sentences of 66, 120, 48, and 48 months. But what we have said before we will say again: Section 3553(a)(6) "concerns *national* disparities," and does not require district courts to consider "disparities between codefendants." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008).

Parity at any rate requires courts to treat like things alike. Arellanes-Pena and his co-defendants were not alike. None of his co-defendants recruited, oversaw, or paid the others. And none of them communicated with the DEA informant in the run-up to the transaction or on the day of the meeting. Only Arellanes-Pena did those things, and only Arellanes-Pena deserved a markedly higher sentence.

One final note. In his brief, Arellanes-Pena says that the district court sentenced him to 240 months in prison. That could be an honest mistake, though he repeats the mistake ten times. In fact, he never correctly states his sentence: 210 months. He instead argues that the court sentenced him *above* the guidelines range of 168 to 210 months, an argument that turns on a flawed premise and leads to a flawed conclusion.

For these reasons, we affirm.