*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-4065

RAYSHEEN SHARP,

*Defendant-Appellant.*

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-00217—Lesley Brooks Wells, District Judge.

Submitted: March 15, 2006

Decided and Filed: April 5, 2006

Before: COLE, GILMAN, and FRIEDMAN, Circuit Judges.[*]

---

## COUNSEL

**ON BRIEF:** Margaret Amer Robey, Gregory S. Robey, ROBEY & ROBEY, Cleveland, Ohio, for Appellant. Robert W. Kern, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. Pursuant to a plea agreement, Raysheen Sharp pled guilty to a charge of conspiracy to make, utter, and possess counterfeit and forged securities. Sharp was subsequently sentenced to 33 months of imprisonment and ordered to pay restitution in the amount of $49,599.74. On appeal, Sharp argues that: (1) he is entitled to be resentenced pursuant to *United States v. Booker*, 543 U.S. 220 (2005), (2) the district court failed to follow *Shepard v. United States*, 544 U.S. 13 (2005), in calculating his criminal history category, and (3) the district court abused its discretion in calculating the amount of restitution. Sharp does not challenge his conviction.

The government filed a motion to dismiss, arguing that Sharp has waived his right to appeal pursuant to the terms of his plea agreement. Sharp contends, however, that the district court did not

---

[*]The Honorable Daniel M. Friedman, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

adhere to the requirements of Rule 11 of the Federal Rules of Criminal Procedure when it failed to ascertain that he understood the precise terms of the appellate-waiver provision. For the reasons set forth below, the government's motion to dismiss is **GRANTED**.

## I. BACKGROUND

In June of 2003, a federal grand jury in Cleveland, Ohio returned an indictment charging Sharp with one count of conspiracy, in violation of 18 U.S.C. § 371, and various counts of making, uttering, and possessing counterfeit securities of an organization, in violation of 18 U.S.C. § 513. Sharp pled guilty to the conspiracy count in exchange for the government's agreement to drop the other counts. The plea agreement was accepted by the district court without any objection by Sharp.

Sharp admitted to the following facts in his plea agreement: (1) he knowingly conspired with codefendants Vaden Anderson and Dante Wade, along with eleven other codefendants, to make, utter, and possess counterfeit checks of various organizations with the intent to deceive other persons or organizations, (2) he and his codefendant Wade supervised the conspiracy and recruited other individuals to negotiate counterfeit checks, and (3) as a result of the conspiracy, at least 29 counterfeit checks were negotiated in the greater Cleveland area, causing losses of $49,599.74. Under the terms of the plea agreement, Sharp agreed to cooperate with the government and to testify if any of his codefendants went to trial. The government, in exchange for Sharp's cooperation, agreed to inform the district court of the same, but did not agree to seek a downward departure under United States Sentencing Guidelines § 5K1.1.

Sharp's plea agreement also contains an appellate-waiver provision in paragraph 16 that covers virtually all of his appellate and post-conviction rights. Paragraph 16 reads as follows:

> Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. The Defendant expressly waives those rights, except as reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; (b) any punishment to the extent it constitutes an upward departure from the Sentencing Guidelines range deemed most applicable by the Court. Nothing in this paragraph shall act as a bar to the Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct.

During the plea hearing, the district court asked Sharp if he understood the terms of his plea agreement:

| The district court: | Did you understand all the terms and words in the agreement? |
| Sharp: | Yes, sir. |
| The district court: | Is there anything that you did not understand? |
| Sharp: | No, sir. |
| The district court: | And before you signed, did you have the opportunity to discuss it with your attorney? |
| Sharp: | Yes, sir. |

The district court then asked the prosecutor to explain the appellate-waiver provision, which the prosecutor summarized in open court in the following words:

> Paragraph 16 of the plea agreement contains a waiver of Mr. Sharp's appellate rights and post-conviction remedies. There are several exceptions retained. First, the

Defendant reserves the right to appeal any punishment in excess of the statutory maximum. Secondly, he reserves the right to appeal any punishment to the extent it would constitute an upward departure from the sentencing guideline range deemed most applicable by the Court, and also, to the extent the Defendant would have any possible claim of ineffective assistance of counsel or prosecutorial misconduct, that is not waived either. Other than those three or four, depending on how you count the last one, your Honor, everything else is waived.

Following the prosecutor's explanation, the district court did not follow up by asking Sharp if he understood the precise terms of the appellate-waiver provision. Instead, the district court went on to explicitly question Sharp about the waiver of his right to a jury trial, his right to confront witnesses, and his right against self-incrimination. The district court, finding that Sharp's guilty plea was "made voluntarily with a full understanding of all possible consequences," accepted the plea. Sharp was later sentenced to 33 months of imprisonment, followed by three years of supervised release, and ordered to pay restitution in the amount of $49,599.74. On appeal, Sharp argues that the appellate-waiver provision is invalid because the district court did not ensure that he understood the implications of that particular provision, and that, even if valid, he has not waived the right to challenge the district court's restitution order.

## II. ANALYSIS

### A.          Sharp's appellate-waiver provision is enforceable

This court has held that "a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005) (holding that the court lacked jurisdiction to consider McGilvery's appeal because he had waived his appellate rights in the plea agreement) (citation and quotation marks omitted). Rule 11(b) of the Federal Rules of Criminal Procedure requires that the district court "address the defendant personally in open court . . . [and] inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Pursuant to Rule 11, then, a waiver is effective only if understood by the defendant. *United States v. Murdock*, 398 F.3d 491, 495-97 (6th Cir. 2005) (holding that the district court committed plain error where there was no mention of the appellate-waiver provision in open court until after sentencing).

Sharp complains that the district court did not comply with Rule 11 when it relied on the prosecutor to summarize the appellate-waiver provision and when it failed to specifically ascertain whether Sharp understood the provision in the plea agreement. Because Sharp did not object below, his appeal is subject to plain-error review. *Id*. at 496. This court has summarized the "four distinct analyses" of the plain-error inquiry under Rule 52(b) of the Federal Rules of Criminal Procedure as follows:

First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, . . . we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

*United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993) (interpreting *United States v. Olano*, 507 U.S. 725 (1993)); *see also United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997) (en banc) (describing *Thomas*'s division of the plain-error inquiry as "four distinct, though interrelated, analyses"). We must decide at the outset, then, whether, as Sharp contends, the district court

committed an error when it relied on the prosecutor to summarize the appellate-waiver provision and when it failed to specifically ask Sharp whether he understood the provision.

During the plea hearing, the district court asked Sharp if he understood the terms of the plea agreement generally, but the court did not ask a follow-up question specifically targeted at the appellate-waiver provision after the provision was summarized by the prosecutor. Sharp contends that the district court's omission, combined with Sharp's lack of education and lack of sophistication with the criminal justice system, renders the appellate-waiver provision unenforceable.

He relies on the following language from *Murdock*, 398 F.3d at 498, where this court held that the district court's failure to discuss the appellate-waiver provision was plain error, to argue that Sharp's waiver provision is also unenforceable:

> In the absence of a discussion of the appellate waiver provision in open court, we will not rely on a defendant's self-assessment of his understanding of a plea agreement in determining the knowingness of that plea, even where, as the government emphasizes is the case here, the defendant is sophisticated or has significant experience with the criminal justice system.

*Murdock*, however, is easily distinguishable because there was *no* mention of the appellate-waiver provision in open court. *Id*. at 497. Here, the waiver provision was fully explained during the plea hearing by the prosecutor.

Rule 11 of the Federal Rules of Criminal Procedure requires "the court" to inform the defendant of the waiver, but this court in *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006), has recently reaffirmed that an explanation of the appellate-waiver provision by the prosecutor is sufficient to satisfy Rule 11 so long as the court ascertains that the defendant understands the provision. In *Wilson*, the district court asked the prosecutor to explain the terms of the plea agreement to the defendant. *Id*. The prosecutor proceeded to explain the terms, including the appellate-waiver provision, and the district court did not supplement the prosecutor's explanation of the appellate-waiver provision with any further detail. *Id*.

Despite the district court's reliance on the prosecutor to explain the various provisions of the plea agreement, the *Wilson* court considered the appellate-waiver provision enforceable, holding that "because the terms of the plea agreement were fully explained to defendant in open court, Rule 11(b)(1)(N) was not violated." *Id*.; *see also McGilvery*, 403 F.3d at 362 (holding that McGilvery's waiver was valid when "the prosecutor summarized the terms of the plea agreement and specifically explained that McGilvery agreed to waive his right to appellate review").

In holding the waiver enforceable, the *Wilson* court relied on *Murdock*, a case cited by Sharp as "similar to this one." This court in *Murdock*, although finding plain error where there was no mention of the appellate-waiver provision in open court, nevertheless indicated that, in the absence of such an inquiry by the district court, a prosecutor's summary of the key elements of the plea agreement can be sufficient to prove that the defendant's waiver was knowing and voluntary. 398 F.3d at 498; *see also Wilson*, 438 F.3d at 674 ("Indeed, *Murdock* itself indicated a prosecutor in summarizing the key elements of the agreement might adequately address the waiver.") (citations and quotation marks omitted). The fact, therefore, that the prosecutor, rather than the district court, summarized the appellate-waiver provision does not constitute error.

Similarly, the district court's failure to inquire specifically as to whether Sharp understood the appellate-waiver provision was not erroneous. In *Wilson*, rather than asking the defendant a direct question regarding the appellate-waiver provision, the district court simply asked whether the "defendant still desired to plead guilty after being advised of all of his rights." *Id*. The district court's failure to ask a specific question regarding the appellate-waiver provision did not render the

provision invalid, the *Wilson* court reasoned, because other evidence in the record indicated that Wilson's plea was knowing and voluntary, and because the appellate-waiver provision was adequately explained to him in open court. *Id.*

Although the district court's inquiry in *Wilson* occurred after the prosecutor explained the appellate-waiver provision, rather than before the explanation as was the case here, this difference is not dispositive. Rule 11 requires that the district court ascertain that the defendant understands the terms of the plea agreement, but it does not require that the district court ask a particular question about the appellate-waiver provision. We recognize that the failure to ask a specific question about the waiver could be error if the record is not clear that the defendant understood the provision as required by Rule 11. Here, however, we find the record is sufficient to indicate that Sharp understood the terms of the plea agreement. Not only did Sharp sign the agreement, but he also testified in open court that he understood its terms and had ample opportunity to discuss it with his attorney.

Our other cases also instruct us that Sharp's waiver of his appellate rights was valid. In *Murdock*, for example, this court opined that even in the absence of a specific inquiry about the appellate-waiver provision, other evidence of voluntariness can suffice to demonstrate that the defendant's waiver of his appellate rights was knowing and voluntary. 398 F.3d at 497-98. The *McGilvery* court went even further, holding an appellate-waiver provision enforceable where "there [was] nothing in the record to suggest that . . . the defendant misunderstood the scope of his waiver of appellate rights"—essentially requiring the defendant to affirmatively establish his misunderstanding. 403 F.3d at 363 (citation and quotation marks omitted) (ellipses in original).

In the present case, Sharp has made no such showing. Sharp testified in open court that he had read the plea agreement, that he understood its terms, and that he had discussed the agreement with his attorney. He does not dispute this testimony. Instead, Sharp asks us to split hairs and hold that his statement regarding his general understanding of the plea agreement may not be used to demonstrate that he understood its individual provisions. This we refuse to do.

Our cases make clear that the proper inquiry under Rule 11 is whether the defendant was informed of and understood the terms of the plea agreement. *See Wilson*, 438 F.3d at 674; *Murdock*, 398 F.3d at 497-98. Sharp read the plea agreement, discussed it with his attorney, and does not claim that his attorney's explanation of the appellate-waiver provision was inadequate. The district court satisfied Rule 11 of the Federal Rules of Criminal Procedure by ensuring that the appellate-waiver provision was discussed in open court and that Sharp understood his plea agreement. We therefore hold that there was no error.

Because Sharp has not demonstrated that the district court committed an error, we have no need to determine whether the alleged error was plain, whether it affected substantial rights, or whether it undermined the integrity of the proceedings. Despite our holding today, however, we nevertheless acknowledge that the district courts could avoid challenges such as the one before us by specifically asking defendants whether they understand the appellate rights that are being waived. Such an inquiry would be well-placed after either the district court or the prosecutor has fully explained the provisions of the plea agreement. We conclude, however, that the district court's failure to do so in this case was not error because other evidence in the record indicates that Sharp was informed of and understood his rights. *See Murdock*, 398 F.3d at 497-98.

**B.      Sharp cannot appeal the restitution order**

Sharp also argues that the appellate-waiver provision does not bar his appeal of the restitution amount. In the plea agreement, Sharp reserved his right to appeal "(a) any punishment in excess of the statutory maximum[, and] (b) any punishment to the extent it constitutes an upward

departure from the Sentencing Guidelines range deemed most applicable by the Court." Sharp now claims that the district court erred in calculating the losses occasioned by his relevant conduct at $49,599.74—the combined amount lost by all victims of the conspiracy—rather than at $17,418.05, the amount that Sharp admits was lost as the result of his direct actions.

Upon reviewing the two explicit exceptions to the appellate-waiver provision in the plea agreement, we hold that Sharp may not appeal his restitution order. Sharp does not argue that the restitution order constitutes a punishment in excess of the statutory maximum or that it is the result of an upward departure from the applicable Guidelines range. Moreover, even if Sharp had attempted to so argue, his challenge would fail.

This court's key restitution case on point is *United States v. Sosebee*, 419 F.3d 451 (6th Cir. 2005). *Sosebee* held that although "restitution constitutes punishment[,]. . . the restitution statutes do not specify a statutory maximum." *Id*. at 461. Because the restitution statutes do not contain a maximum penalty, Sharp cannot be heard to complain that the restitution order violates the statutory maximum for his offense. Furthermore, the restitution order did not constitute a punishment in excess of the Guidelines range deemed applicable by the court. Unlike other penalties, such as imprisonment or supervised release, the amount of restitution ordered or the method of its calculation is not determined by the Guidelines. Because there is no applicable Guidelines range for the amount of restitution, the restitution order could not have constituted an upward departure from such a range.

The appellate-waiver provision in Sharp's plea agreement allowed for only two exceptions, neither of which is met here. If Sharp had wished to reserve his right to appeal the restitution order, he should have negotiated for that right in his plea agreement. Because he did not do so, we cannot reach the merits of his restitution claim.

## III.  CONCLUSION

For all of the reasons set forth above, the government's motion to dismiss is **GRANTED**.