**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 11a0301n.06**

**No. 08-6173**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | ***May 10, 2011*** |
| Plaintiff-Appellee, | ) | LEONARD GREEN, Clerk |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| RODNEY DAVIS, | ) | District of Tennessee |
| | ) | |
| Defendant-Appellant. | ) | |

Before:     BATCHELDER, Chief Judge; and BOGGS and WHITE, Circuit Judges.

BOGGS, Circuit Judge.

This case requires us to consider how much confusion can enter a Rule 11 colloquy before a defendant's plea is rendered invalid. Rodney Davis pled guilty to conspiracy to distribute five kilograms or more of a substance containing cocaine and fifty grams or more of a substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). For this crime, he faced a mandatory penalty of life imprisonment. Davis now claims he was unaware that pleading guilty would mean spending his entire life in prison because the plea colloquy was so misleading. We disagree and affirm the conviction.

**I**

On September 25, 2002, Davis and nine other defendants were indicted for their participation in a drug conspiracy. Davis was charged with four of the twenty-two counts in the indictment, and

chose to plead guilty rather than go to trial. On August 10, 2007, a plea agreement was signed in which Davis agreed to plead guilty to a single count—a drug offense punishable under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The penalty for this crime is as follows:

> If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . . . If any person commits a violation of this subparagraph . . . *after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release* . . . . [A]ny sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment.

21 U.S.C. § 841(b)(1)(A) (emphasis added). Davis had two prior felony drug offenses: a 1992 conviction for selling and delivering cocaine, and another 1992 conviction for possession of cocaine. Because of these crimes, Davis was subject to the steep penalty of mandatory life imprisonment without the possibility of release.

Davis entered a plea agreement, which stated: "The punishment for this offense is as follows. . . . Because the defendant has two prior felony convictions, imprisonment for a term of not less than life; [and] . . . supervised release for at least ten (10) years and up to life . . . ." In fact, Davis would not be placed on supervised release. The statute explicitly provides that someone with two prior drug felonies will be punished with "a mandatory term of life imprisonment without release." 21 U.S.C. § 841(b)(1)(A). The plea agreement went on to establish the facts underlying the plea and discuss the court's discretion to set Davis's final sentence under the U.S. Sentencing Guidelines.

At Davis's change-of-plea hearing on August 16, 2007, the possibility of supervised release was brought up again.

> Prosecutor: Because Mr. Davis has those two prior drug felony convictions, the statute *requires that he serve a term of life imprisonment*, a fine of up to $ 8 million, supervised release for a period of at least 10 years and up to life, and lawful restitution, and a 100-dollar special assessment. (emphasis added)
>
> The Court: Mr. Davis, if your plea is accepted, you will be adjudged guilty of the offense, and this may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearms. Knowing these penalties, do you still wish to plead guilty?
>
> Davis: Yes, sir.

Later, the court discussed its discretion to impose a sentence under the advisory Sentencing Guidelines. Davis stated that he was aware he would not be released on parole. However, the district court then immediately asked Davis: "Do you understand that as part of your sentence you might receive a term of supervised release?"

Nonetheless, Davis acknowledged at the plea hearing that he had ample time to discuss the plea agreement and the consequences of pleading guilty with his attorney, and appeared to display an understanding of the consequences of his plea. The prosecutor and Davis's attorney mentioned that the mandatory life sentence had been brought to Davis's attention. Davis also admitted that he signed the plea agreement, and that it contained all his understandings about the case.

After the court accepted Davis's plea, the Probation Department prepared a Presentence Investigation Report (PSR). This document was unambiguous: "The minimum term of imprisonment for Count One is **LIFE**." PSR ¶ 56. "Based on a total offense level of 35 and a criminal history category of VI the guideline range for imprisonment is 292 to 365 months.

**However, since the statutory mandatory minimum is LIFE, the effective guideline range is LIFE.**" *Id.* ¶ 58. Davis made no objection to the PSR.

At sentencing in January 2008, Davis indicated that he had received and read the PSR, as well as discussed it with his attorney. The mandatory life sentence was also presented more clearly. However, the district court persisted in informing Davis that he would also receive a term of supervised release. Davis made no objection to the sentence.

Following sentencing, Davis timely appealed. His attorney filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and moved to withdraw. Davis then filed a pro se brief in this court, to which the government responded. We granted prior counsel's motion to withdraw and appointed new counsel with instructions to brief the issue of whether Davis understood the sentence that he would receive as a consequence of his plea.

## II

Davis did not object to any violation of Rule 11 in the district court even after he saw the PSR's unambiguous statement of his minimum sentence. We therefore review this claim only for plain error. Fed. R. Crim. P. 52(b); *United States v. Vonn*, 535 U.S. 55, 59 (2002); *cf. United States v. Reader*, 254 F. App'x 479, 481-82 (6th Cir. 2007) (reviewing an alleged Rule 11 violation for plain error because the defendant "was silent concerning the defect in his plea hearing after receiving actual notice in his PSR of the correct maximum term"). The plain-error standard requires a defendant to show: "(1) error (2) that 'was obvious or clear' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). When a defendant seeks

reversal because of an unpreserved Rule 11 error, the Supreme Court has held that the defendant must show "a reasonable probability that, but for the error, he would not have entered the plea" to establish that the error affected his substantial rights. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

**III**

On appeal, Davis raises three arguments relating to the Rule 11 colloquy: that the district court erred by not informing Davis of the mandatory life sentence he faced; that the district court erred by not ensuring that Davis understood the mandatory life sentence; and that the injection of irrelevant and misleading information regarding his sentence rendered his plea invalid. None of these claims warrant relief.

*A. Whether the district court erred by allowing the prosecutor to inform Davis of his mandatory minimum sentence*

Federal Rule of Criminal Procedure 11(b)(1) requires that "[b]efore the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court." The Rule goes on to say that the court "must inform the defendant of, and determine that the defendant understands," among other things, "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(1)(I). During his plea hearing, the district court delegated this responsibility to the prosecutor, asking, "please advise Mr. Davis of the maximum punishment he faces for this offense. And if there is a mandatory minimum sentence, please advise him of that, also." Davis now claim that this delegation, by itself, was reversible error. We disagree.

It is well established that a prosecutor's explanation can satisfy Rule 11(b)(1)(N), which requires a district court to inform a defendant about any appeal waiver provisions in his plea agreement. "A defendant is sufficiently informed that he has waived his right to appeal if the prosecutor, rather than the district court, summarizes the terms of the plea agreement and specifically explains that the defendant agreed to waive his right to appellate review." *United States v. Zumot*, 337 F. App'x 520, 523 (6th Cir. 2009) (citing *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005)); *see also United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006) ("We hold that, because the terms of the plea agreement were fully explained to defendant in open court, Rule 11(b)(1)(N) was not violated."); *United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006) ("The district court satisfied Rule 11 of the Federal Rules of Criminal Procedure by ensuring that the appellate-waiver provision was discussed in open court and that Sharp understood his plea agreement."). Davis does not try to distinguish this line of cases, but rather stands on the literal language of Rule 11.

We see no reason to draw distinctions between Rule 11's provisions regarding mandatory minimums and appeal waivers in this context. "Our cases make clear that the proper inquiry under Rule 11 is whether the defendant was informed of and understood the terms of the plea agreement." *Sharp*, 442 F.3d at 951. When the prosecutor addresses the defendant in open court to explain the mandatory minimum, the defendant has been informed. Indeed, our analyses under Rule 11(b)(1)(N) do not assume that a prosecutor's explanation is inferior to the court's. Rather, the inquiry is focused on whether the defendant understood the terms as the prosecutor or the court explained them. *See, e.g., United States v. Berro*, 348 F. App'x 98, 102 (6th Cir. 2009) (focusing on whether the

prosecutor's explanation of the appeal waiver was clear and whether the district court sufficiently followed up). It was therefore not reversible error, by itself, for the district court to have the prosecutor read Davis his mandatory minimum sentence.

*B. Whether the district court erred by not ensuring that Davis understood the minimum sentence*

Davis also claims that the district court erred by not specifically inquiring as to whether Davis understood the mandatory minimum he faced after the prosecutor informed him of it. We have held that a district court need not ask specific follow-up questions about an appeal waiver to satisfy Rule 11(b)(1)(N). *See, e.g.*, *United States v. Shearer*, 301 F. App'x 450, 454 (6th Cir. 2008) (citing *Sharp*, 442 F.3d at 951). Moreover, even if we were to distinguish mandatory minimums in this context, the record shows that the district court asked Davis sufficiently specific questions to satisfy Rule 11. After the prosecutor informed Davis about the statutory minimum sentence he faced and the district court explained the civic consequences of a guilty plea, the court asked if Davis, "knowing these penalties," still wished to plead guilty. The district court also asked whether "you and your attorney talked about the possible sentence you might receive." In response, Davis indicated, "[y]es, sir, we have." These questions indicate that the district court made a sufficient inquiry into Davis's understanding of his minimum sentence.

*C. Whether the plea hearing as a whole was so misleading that Davis did not understand the mandatory minimum penalty he faced*

Finally, Davis argues that the plea hearing was so filled with extraneous information, irrelevant to his particular sentence, that he was misled into believing he might receive a sentence shorter than life imprisonment.

The district court's plea colloquy and the government's plea agreement—both apparently derived from scripts—interjected into the proceeding two elements that were irrelevant to a mandatory life sentence: supervised release and the court's authority under the advisory Sentencing Guidelines. Ordinarily, these topics would not present a problem. Indeed, the district court is required to inform a defendant about its obligation to consider the guidelines and the 18 U.S.C. § 3553(a) factors. Fed. R. Crim. P. 11(b)(1)(M). However, this case is unusual. Davis was facing a mandatory sentence of life imprisonment—the district court had no authority to set any other sentence and Davis was never going to be released. Thus, although the plea agreement and the prosecutor's statement during the plea hearing were explicit that Davis faced life imprisonment, he nonetheless argues that the omission of "without release," the mention of supervised release, and the inclusion of discussions about the district court's authority to set Davis's sentence misled him into believing he would not serve out his entire life in prison.

Even if we assume that these remarks constitute error, they do not warrant reversal because Davis cannot show an effect on his substantial rights. To meet this burden, Davis would have to demonstrate a "reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83. We look to the record as a whole in making that determination. *Ibid.* For example, the Supreme Court has found relevant a defendant's statement that he did not intend to go to trial and that the evidence against him was overwhelming. *Id.* at 84-84. Here, there

is similar evidence that Davis would have pled guilty even in the absence of the allegedly misleading remarks.

For one thing, the record indicates that Davis almost certainly understood the minimum sentence he faced. The mandatory life sentence was, after all, read aloud to him in open court *and* included in his plea agreement. The presence of additional, misleading language can only slightly undermine that fact. *Cf. United States v. Williams*, 176 F.3d 301, 309-10 (6th Cir. 1999) (rejecting a claim that the defendant, who received a prison sentence of more than ten years, was misled when the district court said it would "probably" sentence the defendant to prison if the guilty plea was accepted). Further, Davis reported that he had a good relationship with his lawyer and that his lawyer explained the consequences of his plea, *including his sentence*. Davis's lawyer and the prosecutor both indicated that Davis was aware of the life sentence.

As evidence of his misunderstanding, Davis argues that no one would plead guilty to life without parole because there is no benefit to such a plea. *See United States v. Walden*, 625 F.3d 961, 964 (6th Cir. 2010). But, the record also indicates that Davis made a strategic gamble with his plea. The evidence against him was overwhelming and the sentencing transcript reveals that the government had been working with Davis to get him a lower sentence. If he had provided enough assistance in the prosecution of others for the government to move under 18 U.S.C. § 3553(e), then the court would have had discretion to set Davis's sentence as something lower than life. Davis also indicated in a letter filed to the court that he pled guilty on his attorney's advice to "tell what I know

of others committing illegal activities to receive a [departure under USSG §] 5K1[.1][1] so that's

exactly what I did . . . ." Although he was ultimately unsuccessful, we must look to his state of mind

at the time the plea was entered. The record supports the finding that, even in the absence of the

allegedly confusing language that Davis raises here, Davis would have made the decision to plead

guilty and hope for a deal with the government.

**IV**

For these reasons, the district court's judgment is AFFIRMED.

---

[1]United States Sentencing Guideline § 5K1.1 allows the court to make a departure for substantial assistance, but it does not, by itself, allow the court to go below the statutory minimum sentence. *United States v. McIntosh*, 484 F.3d 832, 835 (6th Cir. 2007). However, the same substantial assistance can be grounds for a motion under 18 U.S.C. § 3553(e), which does allow the court to deviate below the minimum sentence.

No. 08-6173
United States v. Davis

**HELENE N. WHITE, Circuit Judge** (dissenting).  Because I cannot, on this record, comfortably conclude that Davis understood that his plea of guilty would result in a mandatory life sentence, I respectfully dissent from my colleagues' thoughtful opinion.  I would remand to allow Davis to change his plea.

As the majority opinion recognizes, the district court injected confusion into the plea hearing by referring to matters that, while proper in a usual plea proceeding, were confusing in Davis's case.  Davis divides the confusing and contradictory statements of the district court into three categories:

> (1) statements regarding how Davis's sentence would be calculated under the Sentencing Guidelines (which, in fact, had no bearing on Davis's sentence because of the statutory minimum)[1]; (2) statements to the effect that Davis's ultimate sentence was within the sole discretion of the district court (which was simply incorrect, in light of the statutory minimum)[2]; and (3) statements about the terms of Davis's release from prison (which were affirmatively misleading, in view of the statutory minimum of life imprisonment without the possibility of parole).[3]

---

[1] *See* Plea Hr'g Tr. 11 ("[T]he United States Sentencing Commission has issued guidelines for judges to consider in determining the sentence in a criminal case.  The Court, however, is not bound by these Guidelines and may lawfully impose a sentence upon you up to and including the maximum punishment that Mr. Sullivan stated."); *id.* at 12-13 ("[Your] sentence may be more severe or less severe than the sentence called for by the sentencing guidelines[.]").

[2] *See* Plea Hr'g Tr. 12 ("Do you also understand that your sentence will be determined by me and that I will consider the sentencing guidelines in setting your sentence but I may also consider other factors after I have received and reviewed the presentence report and heard what you, your attorney, and the government have to say with regards to an appropriate sentence in this case . . . .").

[3] *See* Plea Hr'g Tr. 13 ("Do you also understand that as a part of your sentence you might receive a term of supervised release?"); *see also id.* at 10 (prosecutor's statement that "the statute requires that he serve a term of life imprisonment, a fine of up to $8 million, *supervised release for a period of at least 10 years and up to life*, any lawful restitution, and a 100-dollar special assessment" (emphasis added)).

(Appellant Br. 23.) Because the district court had no discretion to sentence Davis to anything less than life in prison without possibility of release, these statements were misleading. *See* 21 U.S.C. § 851(d)(1) ("If the person files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions, the court *shall* proceed to impose sentence upon him as provided by this part." (emphasis added)); 21 U.S.C. § 841(b)(1)(A) (providing for "a mandatory term of life imprisonment without release" for a person with two or more prior felony drug convictions). The record lacks sufficient indication that Davis actually understood the mandatory life sentence he faced, as required by Fed. R. Crim. P. 11(b)(1)(I), and I would hold that the totality of the district court's incorrect and contradictory statements constituted plain error.

To constitute plain error, there must be "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal quotation marks omitted). In the context of a challenge to a court's proper administration of Rule 11, showing that the court's error affected defendant's substantial rights requires the defendant to "show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). If there is "evidence tending to show that a misunderstanding was inconsequential to a defendant's decision," there is no effect on the defendant's substantial rights. *Id.* at 84.

To affect a defendant's substantial rights, there must be "nothing in the record [that] indicates that the defendant independently knew or was advised of the correct" mandatory minimum sentence.

*United States v. Smagola*, 390 F. App'x 438, 442 (6th Cir. 2010) (unpublished); *see also United States v. Syal*, 963 F.2d 900, 906 (6th Cir. 1992) (holding that "the failure to notify the defendant of the term of supervised release and its possible effect on his sentence was not harmless error" where "[n]othing in the record suggests that the defendant understood that his sentence would include supervised release [and] [t]here was no written plea agreement by which he might have been warned"). While the record does seem to show that Davis's attorney understood the mandatory life sentence, it only implies, but does not clearly demonstrate, that Davis himself understood. The lack of affirmative indication at the hearing *from Davis himself* supports Davis's argument that he did not know he was subject to a mandatory life sentence, and that he would have opted to go to trial had he known. Further, even if Davis had been informed of the mandatory life sentence by his attorney at the start of the hearing, the court's repeated misleading statements as the hearing progressed may have served to convince him that the life sentence was not in fact mandatory, and that the court had discretion to impose a lesser sentence.

The government argues that Davis knowingly entered into the plea agreement in an effort to have the government move under § 3553(e) for a lesser sentence  to reward Davis's "substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). Aside from the letter cited by the majority, and an oblique reference by Davis's attorney at the sentencing hearing,[4] the record does not contain evidence that Davis understood that

---

[4]"And to be quite honest, the government and the agents involved with him have worked hard with us to try and get us to a point where we can help him, but we haven't been able to do so to this point." (Sentencing Hr'g Tr. 5.)

this was the plan, and that he would definitely be sentenced to life in the absence of the desired motion. The government's account provides a plausible explanation, but without more in the record to substantiate it, it cannot overcome the district court's plain error. The government's unsubstantiated argument aside, Davis received no benefit from pleading guilty because he was subject to a mandatory life sentence either way. Thus, "[t]here is a reasonable probability, sufficient to satisfy the plain error standard, that [Davis] would have gone to trial, had he . . . understood[] that he faced the same mandatory minimum sentence whether he pled guilty or went to trial on the single charged offense." *United States v. Valdez*, 243 F. App'x 217, 219 (9th Cir. 2007) (unpublished).

"In cases involving Rule 11 errors, [this court] ha[s] stated that 'where the error involves the defendant's state of mind . . . the appropriate remedy is to vacate the plea and remand so that the defendant can plead anew' if he chooses, or proceed to trial." *United States v. Reader*, 254 F. App'x 479, 482 (6th Cir. 2007) (unpublished) (quoting *United States v. Tunning*, 69 F.3d 107, 115 (6th Cir. 1995)). Although the prosecutor and the plea agreement did state that Davis faced a mandatory life sentence, both the plea agreement and the plea hearing were so confusing in their totality that it is impossible to be sure that Davis understood the applicable mandatory minimum sentence as required by Rule 11(b)(1)(I).

To be sure, many of the boilerplate statements and warnings required of a sentencing court conflict with a mandatory sentence. But the resulting uncertainty should be clarified with an unambiguous statement that the defendant faces a mandatory minimum sentence of life imprisonment. It is a district court's task to ensure that the defendant understands the sentence he

faces, *and* to provide a sufficient record to verify that Rule 11 was followed when the case reaches

us on appeal.[5]  I would remand to allow Davis to withdraw his plea and proceed to trial.

---

[5]Although no particular formulation is required, the goal should be to assure that the defendant understands the consequences of the contemplated guilty plea.  An excess of caution is not inappropriate under these circumstances, and would have supported addressing Davis as follows:

> Mr. Davis, in the course of these proceedings, I have made a number of references to the sentencing guidelines, supervised release, my discretion as a judge to choose what I think is an appropriate sentence, and similar statements.  But these statements really don't apply to your situation.  In your case, because of your prior felony drug convictions, the law provides for a mandatory sentence of life imprisonment, from which no supervised release is possible. This means that if you plead guilty, nothing else matters and I must impose a life sentence.  The only way a life sentence can be avoided is if the Government chooses to file a motion under § 3553(e).  But, the Government gets to decide whether to file such a motion.  You may cooperate with the Government and the Government may still decide not to file the motion. So, do you understand what I just explained to you?  Please tell me in your own words what you think I just explained?  Do you have any questions?  Understanding this, do you still wish to enter a plea of guilty?

I do not imply that such a detailed statement is required, only that it is advisable.