NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0040n.06

No. 24-3115

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 28, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| SAMIR MOHAMMAD, | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: BOGGS, GIBBONS, and NALBANDIAN, Circuit Judges.

BOGGS, Circuit Judge. Defendant-Appellant Samir Mohammad pleaded guilty to conspiracy and fraud-related charges pursuant to a written plea agreement that included an appellate-waiver provision. As part of his guilty plea, Mohammad agreed to pay restitution on a joint-and-several basis. Mohammad now appeals the district court's order denying his motion to modify and discharge his restitution obligation on the basis that the district court ordered him to pay restitution jointly and severally with his co-conspirators, even though, at their sentencings, the restitution obligations of Mohammad's co-conspirators were not uniformly joint and several.

The government argues that Mohammad's appeal should be dismissed based on the appellate-waiver provision in his plea agreement. We agree. We DISMISS Mohammad's appeal because we find that Mohammad validly waived the right to appeal his sentence.

**BACKGROUND**

**A. Facts**

In September 2011, Samir Mohammad was indicted by a federal grand jury for his role in a pay-to-play scheme uncovered in Cuyahoga County, Ohio.[1] The indictment sets out the following: Mohammad served as Cuyahoga County's deputy auditor. His responsibilities included maintaining the Auditor's Office budget and working on Cuyahoga's Geographic Information Systems (GIS) project. Mohammad conspired with others to solicit and accept bribes from Broma Information Technology, an IT consulting firm, and in return, to award business to Broma on the GIS project. For his role in the "GIS/Broma scheme," Mohammad was charged with five counts:

1. RICO Conspiracy (18 U.S.C. § 1962(d));
2. Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds (18 U.S.C. § 371);
3. Hobbs Act Conspiracy (18 U.S.C. § 1951);
4. Tampering with a Witness (18 U.S.C. §§ 1512(b)(1)(2) & (3)); and
5. False Statements to Law Enforcement (18 U.S.C. § 1001).

In October 2012, pursuant to a written plea agreement, Mohammad entered a guilty plea to each of the five counts.

**B. The Plea Agreement and Appellate Waiver**

Mohammad's plea agreement contained a "Waiver of Appellate Rights." The appellate waiver reads as follows:

> Defendant acknowledges having been advised by counsel of Defendant's rights, in limited circumstances, to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255. Defendant expressly and voluntarily waives those rights, except as specially reserved below. Defendant reserves the right to appeal: (a) any punishment in excess

---

[1] In 2007, the FBI launched a multi-year investigation that uncovered large-scale public corruption in Cuyahoga County. The probe resulted in the arrests of dozens of individuals, including public officials, judicial officers, and private businessmen, and resulted in the filing of several indictments.

of the statutory maximum; (b) any sentence to the extent it exceeds offense level 29 before applying reductions for acceptance of responsibility and/or substantial assistance, or (c) the Court's determination of Defendant's Criminal History Category. Nothing in this paragraph shall act as a bar to Defendant perfecting any legal remedies Defendant may otherwise have on appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct.

During his change-of-plea hearing, Mohammad confirmed that he understood each part of the waiver paragraph. After reviewing each part of the appellate waiver, the district court stressed to Mohammad that he was "giving up [his] right to appeal [his] conviction and sentence . . . except in very limited circumstances."

Mohammad initialed each page of the plea agreement and added his signature to the page titled "Signatures." On the "Signatures" page, directly above Mohammad's signature, the plea agreement reads:

> Defendant: I have read this entire plea agreement and have discussed it with my attorney. I have initialed each page of the agreement to signify that I understand and approve the provisions on that page. I am entering this agreement voluntarily and of my own free will. No threats have been made to me, nor am I under the influence of anything that could impair my ability to understand this agreement.

Mohammad confirmed with the court that he initialed and signed the plea agreement after he "had adequate time and opportunity to read and review the agreement . . . and discuss it with [his] attorney."

The plea agreement also required Mohammad to pay "full restitution as ordered by the Court pursuant to [18 U.S.C. § 3663A] on a joint and several basis . . . for the losses caused by [his] relevant conduct in this case, as defined under Guideline § 1B1.3." The forfeiture paragraph explains that "pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)," Mohammad must forfeit $50,000, "as it constitutes proceeds traceable to the commission of the criminal activity

charged in" two of the counts. The forfeiture order stipulates that the $50,000 will be credited to Mohammad "when the Court calculates his restitution at sentencing."

As with the appellate waiver, the district court discussed the restitution and forfeiture provisions of the plea agreement with Mohammad. Mohammad confirmed his understanding of both sections. The court also asked the government to "fully explain the relationship between the restitution and forfeiture and the terms of the agreement as it pertains to those two items." The government explained that "[r]estitution . . . as everyone has agreed and understands, will be determined . . . between now and the time of sentencing following an investigation by the probation department." The forfeiture provision, the government explained, "relates to Counts 2 and 3. . . . [T]his $50,000 amount of forfeiture represents Mr. Mohammad's roughly—roughly, Mr. Mohammad's portion of that particular conduct in Counts 2 and 3. And he acknowledges that that money is subject to forfeiture." Finally, the government added that the $50,000 "will be credited against [Mohammad's] ultimate restitution obligation as that is calculated." Mohammad confirmed with the court that he was "listening closely" to the government's overview of the restitution and forfeiture provisions and had a "full understanding of the terms."

In January 2013, the court sentenced Mohammad after it had sentenced one of Mohammad's co-conspirators, but before it had sentenced two of his other co-conspirators.[2] During sentencing, the court began with calculating an advisory sentence. The court determined an offense level of 23 and a criminal-history category of I, leading to a sentencing range of 46 to 57 months; neither the government nor Mohammad's counsel objected.

---

[2] Mohammad had five co-conspirators: Daniel P. Gallagher, Frank Russo, John Kevin Kelley, Anthony Ma, and Kevin Payne. Ma and Payne both died before Mohammad was sentenced.

The court then addressed restitution and forfeiture. The government confirmed that it had received the aforementioned $50,000 check as forfeiture, which would be credited to Mohammad's restitution obligation. The government then advised the court that it was seeking a restitution order "that is joint and several [with Mohammad's co-conspirators]" on Counts 2 and 3, the counts relating to the GIS/Broma Scheme.

The court said, "in all likelihood, then, as it pertains to Mr. Mohammad, even though it's on a joint and several basis, because of all the payments that will be credited, he will not owe any more than the $50,000 that he's paying by way of forfeiture." The government said, "[t]hat's our expectation . . . . But, obviously, we will know after it's all paid, and there may be some balance outstanding." The court agreed, adding a fuller explanation:

> [T]here is one thing to say about what the expectation is, but then the reality of it and the final analysis might not meet that expectation, and I think everyone should understand that, that once that order goes on, it's joint and several, and if for some reason the other defendants involved . . . if for some reason the $190,000 restitution amount isn't paid in full by their collective contributions, then there would be an outstanding portion of it that could be attributable and collected from Mr. Mohammad.

Mohammad's counsel agreed with the court's characterization but noted that Mohammad's "direct involvement . . . in the conspiracy didn't amount anywhere near that $50,000 figure, or $190,000 figure." The court replied, "[e]xcept the standard is a little different when you're dealing with— coconspirators." Mohammad's counsel immediately conceded that "direct involvement" is not the proper measure for restitution in a conspiracy but noted that he "did want to make that point" about Mohammad's involvement in the conspiracy. Ultimately, the parties all agreed that Mohammad's

$190,000 restitution obligation to Cuyahoga County, the victim of the conspiracy, would be joint and several.[3]

Mohammad's counsel sought to clarify whether Gallagher, Russo, and Kelley—Mohammad's still-living co-conspirators—would "also be joint and several as it relates to the restitution." The government said, "I believe it will," but the court stressed that it "can't speak for the government at this point," adding that "[the co-conspirators] are not before me for sentencing, and so I can't speak and will not speak to that issue." The court soon after emphasized—after the government said that its expectation is for the co-conspirators' liabilities to be joint and several—that "it would be very, very inappropriate and premature for [the] court to make that statement at this juncture, because they are not before [the] court for sentencing at this point."

The court sentenced Mohammad to a low-end-of-the-Guidelines sentence of 46 months of imprisonment for each count, to run concurrently. Mohammad did not object to the sentence. The judgment accurately reflected that Mohammad was liable for the full $190,000 of restitution on a joint-and-several basis, and it listed the $50,000 forfeiture obligation that Mohammad had already fulfilled.

Mohammad's still living co-conspirators—Gallagher, Russo, and Kelley—also pleaded guilty to their crimes, but their restitution orders were not uniformly joint and several with Mohammad, apparently disappointing Mohammad's expectations.[4]

---

[3] As suggested above, Mohammad's $190,000 restitution obligation relates to the counts attributable to the GIS/Broma scheme.

[4] In response to a writ and various motions filed by Mohammad to "clarify and correct the record" for Mohammad's restitution obligation, the court explained in a September 2023 Order that "[g]iven the complexity of the underlying federal investigation and the number of criminal schemes involved, as well as the number of defendants and co-conspirators involved spread out over many cases before different judges, it is not surprising that the judgment entries and restitution orders are not entirely consistent."

Mohammad timely appealed his restitution order. He argues that he should be "free from any further restitution payments." While Mohammad does not dispute that his own sentence "included making restitution in the amount of $190,000," he argues that the district court "erred in ending Mr. Gallagher's restitution obligation" because Gallagher should have been jointly and severally liable with Mohammad. After all, Mohammad says, he and his co-conspirators "all participated in the overall scheme." According to Mohammad, if his co-conspirators' sentences properly reflected the parties' respective culpability, then he would no longer have any restitution obligations.

In addition to forcefully responding to the merits of Mohammad's appeal,[5] the government brings this court's attention to the appellate-waiver provision in Mohammad's plea agreement. The government argues, "Mohammad knowingly and voluntarily waived his right to appeal the district court's restitution order, including its denial of his motion to modify [his restitution obligation]." Because we determine that Mohammad validly waived his right to appeal his sentence, we need not address the merits of his restitution arguments.

## DISCUSSION

### A. Standard of Review

"The question of whether a defendant waived the right to appeal his sentence in a valid plea agreement is reviewed de novo." *United States v. Martinez*, 430 F. App'x 406, 409 (6th Cir. 2011) (citing *United States v. Thomas*, 605 F.3d 300, 312 (6th Cir.2010)).

---

[5] Among other things, the government points out that Mohammad has already been granted much of the relief he seeks: some of the restitution payments made by his co-conspirators have already been credited toward Mohammad's restitution obligation, which has the same effect to his benefit as joint-and-several liability.

## B. Legal Framework

It is axiomatic that criminal defendants may waive their right to appeal their sentence as part of a valid plea agreement. *United States v. Milliron*, 984 F.3d 1188, 1192 (6th Cir. 2021). This court has "repeatedly recognized that restitution is a part of a defendant's sentence." *United States v. Rafidi*, 730 F. App'x 338, 340 (6th Cir. 2018) (citing *United States v. Winans*, 748 F.3d 268, 271 (6th Cir. 2014)). Thus, a valid waiver provision that covers a criminal defendant's sentence extinguishes that defendant's right to appeal a restitution order. *Ibid.* (citing *United States v. Sharp*, 442 F.3d 946, 948, 952 (6th Cir. 2006)).

"A waiver provision is binding and forecloses appellate review if (1) the defendant's claim falls within the scope of the appeal waiver provision; and (2) the defendant 'knowingly and voluntarily' agreed to the plea agreement and waiver." *Milliron*, 984 F.3d at 1193 (citing *United States v. Toth*, 668 F.3d 374, 377–78 (6th Cir. 2012)).

The waiver provision here functions to bar Mohammad's appeal because 1) Mohammad's claim falls within the scope of the provision; and 2) he knowingly and voluntarily agreed to the plea agreement and waiver.

## C. Scope of the Appellate-Waiver Provision

First, Mohammad's appeal falls within the scope of the appellate-waiver provision. With five narrow exceptions, Mohammad "expressly and voluntarily" waived his right to appeal his conviction or sentence. Mohammad reserved the right to appeal: 1) a punishment in excess of the statutory maximum; 2) a sentence that exceeds offense level 29 before applying reductions for acceptance of responsibility and/or substantial assistance; 3) the court's criminal-history-category determination; 4) ineffective assistance of counsel; and 5) prosecutorial misconduct.

None of those exceptions apply here. Mohammad clearly does not make any arguments about the court's criminal-history-category determination, ineffective assistance of counsel, or prosecutorial misconduct. That leaves this court to determine whether Mohammad is appealing: 1) a punishment in excess of the statutory maximum; or 2) a sentence that exceeds offense level 29 before applying the relevant reductions.

He is not appealing either. Mohammad received a 46-month within-Guideline sentence, and there is no applicable statutory maximum for restitution attributable to a conspiracy. *See Sharp*, 442 F.3d at 952 ("[A]lthough 'restitution constitutes punishment[,] . . . the restitution statutes do not specify a statutory maximum. . . . '" (second alteration in original) (quoting *United States v. Sosebee*, 419 F.3d 451, 461 (6th Cir. 2005))); *cf. United States v. Freeman*, 640 F.3d 180, 193 (6th Cir. 2011) (distinguishing *Sharp* because *Sharp* involved a conspiracy charge and holding that restitution *does* set a statutory maximum in some cases: "the amount causally linked to the offense of conviction" (quoting *United States v. Gordon*, 480 F.3d 1205, 1210 (10th Cir. 2007))).[6]

Nor did Mohammad receive a sentence that exceeds offense level 29 before applying reductions for acceptance of responsibility and substantial assistance. The court started with a base-offense-level of 14, added 2 levels under USSG § 2C1.1(b)(1) because the offense involved more than one bribe, added 12 levels under § 2B1.1(b)(1)(G) because the value of anything obtained by a public official or others acting with a public official exceeded $200,000, and then added 4 levels because the offense involved an elected public official, making the total adjusted offense level at that point 32. Then, Mohammad received a 3-level reduction under § 3B1.2 because the court found that Mohammad was "more than a minor participant but less than a minimal participant" in

---

[6] *Freeman* does not cut against *Sharp*'s applicability to this case because Mohammad, like the defendant in *Sharp* and unlike the defendant in *Freeman*, pleaded guilty to a conspiracy count. *See Freeman*, 640 F.3d at 193.

a RICO conspiracy.[7] Thus, the offense level was 29 before any reductions for acceptance of responsibility and substantial assistance.[8]

### D. Whether Mohammad Knowingly and Voluntarily Agreed to the Waiver

Second, we hold that Mohammad knowingly and voluntarily agreed to the plea agreement and waiver therein, and the district court complied with Rule 11.

Because Mohammad does not argue that he did not knowingly and voluntarily agree to the plea agreement or waiver, we need not conduct analysis on this point. *See Freeman*, 640 F.3d at 192 (holding that where the defendant "does not deny that his agreement was knowing, voluntary, and intelligent," this court need not address that issue (quoting *United States v. Caruthers*, 458 F.3d 459, 470 n.3 (6th Cir. 2006))). Mohammad does not articulate any basis to attack the appellate-waiver provision—indeed, his brief does not mention the provision at all.

To be sure, in any case, "[t]he record here clearly demonstrates that [Mohammad] understood the waiver contained in the plea agreement and consented to it voluntarily." *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001); *see ibid.* ("The sine qua non of a valid waiver is that the defendant enter into the agreement knowingly and voluntarily.").

To determine whether Mohammad knowingly and voluntarily agreed to the plea agreement and waiver, we review his written agreement and plea colloquy. *See United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021). In doing so, we ensure the district court's compliance with Federal Rule of Criminal Procedure 11, which requires the court to "address the defendant personally in open

---

[7] The district court appears to have misspoken. The court clearly meant to say that Mohammad was more than a "minimal participant," but less than a "minor participant"—a "minimal participant" is less involved in an offense than a "minor participant." *See* USSG §3B1.2. In any event, Mohammad properly received a 3-level reduction for being between a "minimal" and "minor" participant.

[8] Mohammad did receive a 3-level reduction for acceptance of responsibility and an additional 3-level reduction for substantial assistance, ending up at an offense level of 23.

court . . . [and] inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." *Sharp*, 442 F.3d at 949 (quoting FED. R. CRIM. P. 11(b)).

*Written agreement.* As the government points out, the appellate-waiver provision as drafted in the plea agreement is both "succinct and clear." The provision emphasizes that Mohammad can only appeal his conviction or sentence "in limited circumstances." Those limited circumstances say nothing about restitution. Moreover, the written agreement is explicit in its requirement that Mohammad must pay restitution "on a joint and several basis."

*Plea colloquy.* "[T]he record reflects the care taken by the district court in this case to ensure that [Mohammad] understood the full ramifications of his plea." *Toth*, 668 F.3d at 379. As discussed above, the court confirmed that Mohammad had discussed the plea agreement with counsel, understood it, and read it in full before signing it. Likewise, as also outlined above, the court discussed the appellate-waiver provision with Mohammad, emphasizing to Mohammad that he was "giving up [his] right to appeal [his] conviction and sentence . . . except in very limited circumstances."

Mohammad surely knew that restitution was a part of his sentence because the district court engaged in detailed discussions with Mohammad regarding his restitution obligations. Again, the court went as far as warning Mohammad that the "reality of" the situation might not meet Mohammad's "expectation": "if for some reason the $190,000 restitution amount isn't paid in full by [his co-conspirators'] collective contributions, then there would be an outstanding portion of it that could be attributable and collected from [him]," the court explained.

Mohammad's brief presses that the government represented that Mohammad's co-conspirators would also be jointly and severally liable for the $190,000 in restitution.

This argument could go to whether Mohammad knowingly and voluntarily agreed to the plea agreement, although it is not framed as such in Mohammad's brief. Nevertheless, such an argument is unavailing. The court repeatedly stressed that Mohammad's co-conspirators were not before it. Although the government expressed an "expectation" that the other co-conspirators would also be jointly and severally liable for their respective restitution obligations, "a fundamental principle of appellate procedure" is that this court "review[s] district-court errors, not government ones." *United States v. Simmonds*, 62 F.4th 961, 966 (6th Cir. 2023). And the district court was explicit about the risks of joint and several liability.

Had Mohammad "wished to reserve his right to appeal the restitution order, he should have negotiated for that right in his plea agreement." *Sharp*, 442 F.3d at 952. Because he did not do so, and indeed knowingly and voluntarily waived any right to appeal the district court's restitution order, Mohammad's appeal is not properly before this court.

**CONCLUSION**

For the reasons above, we DISMISS Mohammad's appeal.